No. 93–1201. CAPITAL AREA RIGHT TO LIFE, INC. v. DOWNTOWN FRANKFORT, INC., ET AL. Sup. Ct. Ky. Certiorari denied.

JUSTICE O'CONNOR, dissenting.

Each year, Downtown Frankfort, Inc. (DFI), a nonprofit corporation established to promote downtown revitalization in Frankfort, Kentucky, organizes a 1-day "Great Pumpkin Festival" on the city's St. Clair Mall. Capital Area Right to Life, Inc. (CARTL), had a booth at the 1989 festival, where it, among other things, distributed plastic models of fetuses in little baskets. When many festivalgoers objected to this sort of political advocacy at the festival, DFI adopted a policy of denying booths to organizations that it deemed incompatible with the festival's goals of "fun and entertainment." Under this policy, DFI refused to give CARTL a booth at the 1990 festival; DFI's president explicitly told CARTL representatives that this was because CARTL was a "controversial group." DFI also denied booths to Kentucky NOW and the Kentucky Religious Coalition for Abortion Rights, two political groups with a message opposed to that of CARTL. 862 S. W. 2d 297, 297–298 (Ky. 1993).

CARTL sued, claiming the policy violated its free speech rights. The Kentucky Supreme Court disagreed. It concluded DFI was

a state actor, and thus subject to the strictures of the First Amendment, because (1) DFI is principally funded by state agencies, (2) DFI took over from the city the function of promoting downtown revitalization, and (3) the city temporarily delegated to DFI control over the St. Clair Mall by letting DFI conduct the festival and decide who gets booths. *Id.*, at 299–300. But the court went on to hold that the festival's policy was nonetheless "content neutral," and therefore a valid time, place, and manner restriction. *Id.*, at 300–301. The court interpreted the content-neutrality requirement as meaning that the restriction must be "neutral as to the type of message the restriction permits as well as being nondiscriminatory between messages of the same type, so long as there is a logical and legitimate reason for restricting the type of message." *Id.*, at 301. "It is a critical fact in this case," the court said, "that CARTL's counterparts, NOW and the Religious Coalition for Abortion Rights, were also denied booths in keeping with the festival's theme." *Ibid.*

This content-neutrality analysis is flatly inconsistent with our precedents. The restriction here is clearly not content neutral, and therefore cannot be a permissible time, place, and manner restriction, because it is indisputably justified with reference to the controversial content of the speech. See, *e. g., Boos* v. *Barry,* 485 U. S. 312, 321 (1988). The fact that prochoice speakers were treated similarly under this regulation does not dispose of the content-neutrality analysis; we have time and again rejected the argument that viewpoint neutrality equals content neutrality. See, *e. g., Burson* v. *Freeman,* 504 U. S. 191, 197 (1992); *Boos, supra,* at 319; *Arkansas Writers' Project, Inc.* v. *Ragland,* 481 U. S. 221, 230 (1987); *Consolidated Edison Co. of N. Y.* v. *Public Serv. Comm'n of N. Y.,* 447 U. S. 530, 537–538 (1980); *Carey* v. *Brown,* 447 U. S. 455, 462, n. 6 (1980).

In fact, *Heffron* v. *International Soc. for Krishna Consciousness, Inc.,* 452 U. S. 640 (1981), the case on which the opinion below relied, specifically said that, to be a valid time, place, and manner restriction, a regulation " 'may not be based upon either the content *or subject matter* of speech,' " *id.*, at 648 (emphasis added). Perhaps there is some other reason why the restriction might be permissible; but to call it content neutral and to uphold it on that basis is a serious error and an unfortunate precedent.

I also think the Kentucky Supreme Court's state action analysis raises an important and difficult question. Many private organi-

zations—artists' groups, private hospitals, private universities, organizations that educate the public on social matters, Presidential campaigns—get government subsidies. We have made clear that a state subsidy of a private organization, even a private organization that exercises functions which might otherwise be performed by the State, does not make that organization a state actor for First Amendment purposes. *Rendell-Baker* v. *Kohn*, 457 U. S. 830, 840–843 (1982) (dealing with a First Amendment claim based on the discharge of an employee by a private school for maladjusted high school students). That this case also involves the use of a traditional public forum probably should not change the analysis. Many of the groups mentioned above may put on events in public fora, and it is not clear that they should have any less right to exclude people from their events than any other public forum user would have to exclude others from its rally or parade.

We have recently granted certiorari in *Lebron* v. *National Railroad Passenger Corporation*, 511 U. S. 1105 (1994), to resolve a related state action question. While we cannot now tell to what extent the decision in *Lebron* may bear on this case, I would hold this case pending that decision, and then either grant and remand in light of *Lebron*, or, if *Lebron* proves irrelevant, grant and summarily reverse on the content-neutrality point. Accordingly, I respectfully dissent from the denial of the petition for a writ of certiorari.