**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PAULETTE N. McWATERS,
                    *Plaintiff-Appellee,*

v.

ROBERT R. COSBY, in his official
capacity as a member of the Board of
Supervisors of Powhatan County, and
in his personal capacity,
                    *Defendant-Appellant,*

and

JOHN F. RICK, in his official capacity
as County Attorney for Powhatan
County, Virginia and in his personal
capacity; STEPHEN F. OWEN, in his
official capacity as County
Administrator for Powhatan County,
Virginia and in his personal capacity;
ROY J. HARRISON, in his official
capacity as a member of the Board of
Supervisors of Powhatan County, and
in his personal capacity; T. J. BISE, in
his official capacity as a member of
the Board of Supervisors of Powhatan
County, and in his personal capacity;
EDMUND C. BURRUSS, in his official
capacity as a member of the Board of
Supervisors of Powhatan County, and
in his personal capacity; MARGARET H.
MANNING, in her official capacity as a

No. 02-1430

member of the Board of Supervisors
of Powhatan County, and in her
personal capacity,

*Defendants.*

Wayne W. Wasson,

*Movant.*

Paulette N. McWaters,

*Plaintiff-Appellee,*

v.

John F. Rick, in his official capacity
as County Attorney for Powhatan
County, Virginia and in his personal
capacity; Stephen F. Owen, in his
official capacity as County
Administrator for Powhatan County,
Virginia and in his personal capacity;
Roy J. Harrison, in his official
capacity as a member of the Board of
Supervisors of Powhatan County, and
in his personal capacity; T. J. Bise, in        No. 02-1436
his official capacity as a member of
the Board of Supervisors of Powhatan
County, and in his personal capacity;
Edmund C. Burruss, in his official
capacity as a member of the Board of
Supervisors of Powhatan County, and
in his personal capacity; Margaret H.
Manning, in her official capacity as a
member of the Board of Supervisors
of Powhatan County, and in her
personal capacity,

*Defendants-Appellants,*

and

ROBERT R. COSBY, in his official
capacity as a member of the Board of
Supervisors of Powhatan County, and
in his personal capacity,

*Defendant.*

WAYNE W. WASSON,

*Movant.*

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CA-01-726-3)

Argued: December 5, 2002

Decided: December 27, 2002

Before WILKINSON, Chief Judge, and LUTTIG and
MICHAEL, Circuit Judges.

Reversed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Robert A. Dybing, SHUFORD, RUBIN & GIBNEY,
Richmond, Virginia; Jeff Wayne Rosen, PENDER & COWARD,
P.C., Virginia Beach, Virginia, for Appellants. Patrick Michael
McSweeney, MCSWEENEY & CRUMP, P.C., Richmond, Virginia,
for Appellee. **ON BRIEF:** John A. Gibney, Jr., SHUFORD, RUBIN
& GIBNEY, Richmond, Virginia; Lisa Ehrich, PENDER & COW-
ARD, P.C., Virginia Beach, Virginia; Henry M. Massie, Jr., TAY-
LOR & WALKER, P.C., Richmond, Virginia, for Appellants. Betty
S. W. Graumlich, John L. Marshall, Jr., MCSWEENEY & CRUMP,
P.C., Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Paulette McWaters, a former member of the Powhatan County Board of Supervisors (the "Board"), brought an action under 42 U.S.C. § 1983 against the Board and certain other Powhatan County officials alleging violations of her equal protection and First Amendment rights. Her claims arise out of two events, an investigation of her travel expense reimbursement requests and a subsequent decision not to reimburse her for legal fees she incurred in the course of the investigation. The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) and asserted qualified immunity. The district court denied both the 12(b)(6) motion and the qualified immunity defense, deciding that the allegations in McWaters' complaint, if proven, would establish a violation of clearly established law. We disagree. McWaters' complaint does not establish an equal protection violation, and she cannot show that the defendants violated clearly established law with respect to her First Amendment claim. Accordingly, we reverse the district court's order denying qualified immunity.

I.

The facts, as alleged in McWaters' complaint, are these. McWaters was a member of the Board from 1996 through January 2000, at which point she was replaced by defendant T.J. Bise who currently sits on the Board. Defendant John F. Rick is the County Attorney of Powhatan County and has served in that capacity since 1997. Defendant Stephen F. Owen is the County Administrator of Powhatan County and has served in that capacity since 1993. Defendants Roy J. Harrison, Robert R. Cosby, Edmund C. Burruss, and Margaret H. Manning are members of the Board and have served in that capacity at all times relevant to this case.

McWaters alleges that during the 1996-2000 Board term, the Board members were divided on the issue of financial management of the Powhatan County School District. McWaters was a consistent and outspoken critic of the School Board and the District Superintendent of Schools on that issue. She was also critical of other members of the Board.

In 1998, McWaters and Manning attended a National Association of Counties ("NACO") conference in Portland, Oregon. McWaters and Manning submitted several travel expense reimbursement requests to Powhatan County after attending the conference. The Board approved and authorized payment for McWaters' and Manning's expenses at the 1998 NACO conference.

At an October 11, 1999, meeting of the Board, Denise Eyles, an employee of the Powhatan County School District, addressed the Board during its public comment period and rebuked McWaters for spending County money on travel to various conferences. Eyles confined her criticism to McWaters because her travel expenses in the aggregate were greater than the expenses of any other Board member and because McWaters had been a persistent critic of the Powhatan County School District and its spending practices. Eyles' criticisms made their way into two newspaper articles, one in the *Powhatan Today* and the other in the *Richmond Times-Dispatch*, which ran later that month.

At McWaters' request, Owen sent her a letter on October 25, 1999, wherein he stated that he was not "aware of any improper reimbursements." J.A. 13. After sending that letter, Owen reported that he had developed doubts about certain reimbursement requests submitted by McWaters for the 1998 NACO conference. Without first contacting McWaters or consulting with the Board, Owen asked Rick to investigate the matter. Owen did not ask Rick to investigate any of the other Board members, and no others were investigated.

Rick immediately began his investigation and notified the Chairman of the Board, Cosby, of what he was doing. Ultimately, the investigation into the reimbursements found no criminal violation. In defending herself during the investigation, McWaters incurred $21,153.94 in legal expenses, which she formally requested the Board

to reimburse.[1] On August 14, 2001, Owen advised McWaters that he was denying her request for reimbursement on the advice of Rick that reimbursement for such expenses was not authorized by state law.

McWaters brought suit under section 1983, alleging that the investigation and subsequent refusal to reimburse amounted to a denial of her equal protection and First Amendment rights. She sued all defendants in their official as well as their individual capacities. The defendants moved to dismiss under Rule 12(b)(6) for failure to state a claim and asserted qualified immunity. The district court denied the motion and rejected the qualified immunity defense. *See McWaters* v. *Rick*, 195 F. Supp. 2d 781 (E.D. Va. 2002). The defendants appealed.

## II.

The defendants contend that the district court erred by denying them qualified immunity. Because the defendants' assertion of qualified immunity arises in conjunction with a motion to dismiss, we take the facts as alleged in McWaters' complaint as true. *See McVey* v. *Stacy*, 157 F.3d 271, 276 (4th Cir. 1998). We review the district court's denial of qualified immunity *de novo*. *See id.* at 276. We consider first whether the facts as alleged by McWaters state a constitutional violation. *See Saucier* v. *Katz*, 533 U.S. 194, 201 (2001). If so, we proceed to consider whether the right was clearly established; that is, whether a reasonable officer in the respective defendants' positions would have known that he was violating federal law. *Id.* at 201-02.

---

[1]According to Virginia law,

> If any officer or employee of any locality is investigated . . . on any criminal charge arising out of any act committed in the discharge of his official duties, and no charges are brought . . . the governing body of the locality may reimburse the officer or employee for reasonable legal fees and expenses incurred by him in defense of the investigation . . ., the reimbursement to be paid from the treasury of the locality.

Va. Code Ann. § 15.2-1521.

A.

The defendants first challenge the legal sufficiency of McWaters' equal protection claim. McWaters alleged in her complaint that the defendants violated her equal protection rights by "intentionally treat[ing] [her] differently from others similarly situated without any rational basis for the difference in treatment," J.A. 19, in the course of (a) investigating only her in the first instance and (b) refusing to grant her request for reimbursement of legal fees.

The first question is of course whether the facts alleged by McWaters establish an equal protection violation. She argues that her allegation is sufficient under *Village of Willowbrook* v. *Olech*, 528 U.S. 562 (2000) (per curiam). In *Olech*, the Supreme Court upheld the viability of a so-called "class of one" theory and concluded that an allegation that one "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" was sufficient to state a claim for an equal protection violation. *Id.* at 564. The Court clarified that the irrationality allegation was separate from the actual subjective motivation of the Village of Willowbrook. *Id.* at 565 (stating that the irrationality allegation was sufficient "quite apart from the Village's subjective motivation").

While McWaters' complaint dutifully asserts irrationality, even a cursory review of the facts *as alleged in her complaint* demonstrates that she has not shown a violation of her equal protection rights, because numerous rational bases for the defendants' actions suggest themselves even from these facts. For example, the defendants may have chosen to investigate only McWaters because her reimbursement requests were the largest and triggered the most public scrutiny, both through the Eyles accusation and the subsequent newspaper articles. And the defendants might have refused her reimbursement request simply because they decided, in their discretion, to conserve county funds.

Because the rational basis inquiry is separate from the subjective motivation inquiry, the defendants are not required to show that they actually were acting on those rational bases. "[T]he State need not articulate its reasoning at the moment a particular decision is made.

Rather, the burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification." *Board of Trustees of University of Alabama* v. *Garrett*, 531 U.S. 356, 367 (2001) (internal quotation marks omitted). Since McWaters' complaint does not negative the facts that support the rational bases noted above — indeed, it alleges them — it follows that she has failed in her burden of asserting irrationality. Thus, all of the defendants are entitled to qualified immunity on the ground that McWaters has not pled a violation of her rights under the Equal Protection Clause.

### B.

The defendants also insist that they are entitled to qualified immunity as to McWaters' First Amendment claim. McWaters alleged in her complaint that the investigation and refusal to reimburse

> were motivated and activated by [her] outspoken criticism of other members of the Board of Supervisors, as well as the management of the Powhatan County School District and Owen himself, during [her] term of office as a member of the Board of Supervisors. The investigation of [McWaters] was intended to punish her for her criticism and to discourage her from publicly expressing her views.

J.A. 19-20. She asserted that this conduct violated her First Amendment right to be free from retaliatory government action.[2]

The first question is, once again, whether McWaters has successfully pled a violation of federal law. We conclude, for substantially

---

[2]McWaters has not stated a claim against the Board members themselves for retaliatory action with respect to the investigation. Defendants Cosby, Burruss, Harrison, Manning, and Bise cannot be liable for the investigation because, as stated in McWaters' complaint, they did not initiate the investigation, J.A. 13, and, under Virginia law, it appears that the only means by which they could have stopped the investigation was by revoking McWaters' reimbursements. *See* Va. Code Ann. § 15.2-1245(B). Thus, McWaters' quarrel with respect to the investigation is at most with defendants Owen and Rick.

the same reasons given by the district court, that McWaters has pled a First Amendment violation. *See McWaters*, 195 F. Supp. 2d at 794-805. The district court's reasoning was quite thorough, and we will not repeat it here. Suffice it to say that McWaters' allegations that the defendants took adverse action against her with the purpose of chilling her protected speech are sufficient to state a First Amendment retaliation claim.

We disagree, however, with the district court's conclusion that the First Amendment right asserted by McWaters was clearly established. As the district court acknowledged at the beginning of its analysis, "[i]t is not entirely clear which retaliation test applies under these circumstances and, to complicate matters, courts have not been entirely consistent in their analytical approach." *Id.* at 796. Such a conclusion as to the state of the law should normally require a grant of qualified immunity. Moreover, not only is the law unclear in this area, but the application of the law to the facts is often difficult to predict. As we have said, "particularly in First Amendment cases, where a sophisticated balancing of interests is required to determine whether the plaintiff's constitutional rights have been violated, only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected." *McVey*, 157 F.3d at 277 (internal quotation marks omitted).

In this case, we cannot say that a reasonable officer would have known what retaliation test would apply, and accordingly whether his actions were in violation of the law. McWaters points to no cases which are factually analogous. Her case is atypical, in part, because she is an elected public official, rather than a rank-and-file public employee. *See McWaters*, 195 F. Supp. 2d at 796 ("The public employee cases decided by the Fourth Circuit do not involve public employees who also are members of a governing body of a local government entity."). As an elected public official, the First Amendment interests implicated are different from those of an ordinary civil servant and local officials are not required to perfectly predict what a court will later determine those interests to entail. Further compounding the confusion as to the applicable legal standard, McWaters was not a public employee at the point at which the Board denied her reimbursement request. Under these circumstances, even though McWaters has alleged a First Amendment violation, her claim ulti-

mately must fail because she cannot show that a reasonable officer in the defendants' positions would have known that he was violating federal law.

## CONCLUSION

For the reasons stated herein, the district court erred in denying the defendants qualified immunity, and accordingly the judgment is reversed.

*REVERSED*