Rebecca WILLIS, Plaintiff,

v.

TOWN OF MARSHALL, North Carolina, a corporation of the State of North Carolina, Defendant.

No. CIV. 1:02CV217.

United States District Court, W.D. North Carolina. Asheville Division.

Nov. 25, 2003.

Marc C. Tucker, Smith Moore LLP, Seth H. Jaffe, Jonathan D. Sasser, Ellis & Winters, LLP, Raleigh, NC, for Plaintiff.

Gene B. Johnson, Sandra M. King, Russell, King, & Johnson, P.A., Larry B. Leake, Harrell & Leake, Asheville, NC, for Defendant.

### MEMORANDUM OF OPINION

THORNBURG, District Judge.

**THESE MATTERS** are before the Court on the Defendant's motion for summary judgment and the Plaintiff's motion for leave to conduct discovery, both filed October 6, 2003. The Plaintiff has filed a memorandum opposing the Defendant's motion for summary judgment, and the matters are ready for resolution.

### I. STATEMENT OF FACTS

The Defendant Town of Marshall, is located in Madison County, North Carolina. Amended Complaint, ¶ 2. For one dollar per year, Defendant leases an old train depot from the Southern Railway Company. *Id.*, ¶ 7–8. The Board of Aldermen for Defendant have appointed a Marshall Depot Committee ("Committee") to coordinate events at the depot. *Id.*, ¶ 10. Among the regular events the Committee organizes are Friday night concerts ("events"), which occur each Friday night and at which the attendees often dance. *Id.*, ¶ 10–12.

Plaintiff Rebecca Willis is a resident of Madison County. *Id.*, ¶ 1. Until late 2000, Plaintiff was a regular at the events, where she particularly enjoyed to dance. *Id.*, ¶ 16–17. On December 12, 2000, the Mayor of Marshall, John Dodson, sent Plaintiff a letter that read:

> Due to the inappropriate behavior exhibited by you and having received previous warnings from the Marshall Depot Committee it is the consensus of the Committee that you are banned from the Marshall Depot. This action is effective as of today's date.

*Id.*, ¶ 18.

Defendant has submitted affidavits from a number of persons who attended the events that claim the Plaintiff wore clothing to the events that revealed her private parts and that she danced in a lewd manner. Affidavit of Beverly Seivers, ¶ 9, *attached to* Defendant's Addendum to Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction; Affidavit of Dora Reeves, ¶ 3, Affidavit of William Allen, ¶ 4, and Affidavit

of Conley Silver, ¶ 3, *attached to* Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction ("Defendant's Opposition to Preliminary Injunction"), filed February 17, 2003.

Plaintiff, on the other hand, claims that she wore proper undergarments so as not to display any private parts and that she did not dance in an abnormally suggestive manner. Second Affidavit of Rebecca Willis, filed March 3, 2003 ("Second Willis Affidavit"), ¶¶ 2, 7. She has also submitted affidavits from people who attended the events that claim she did not expose herself, that she dressed appropriately, and that she did not dance suggestively. Affidavit of Louise Branam, filed October, 6, 2003, ¶¶ 5, 8; Affidavit of Nancy Noland, filed October 6, 2003, ¶¶ 7–8; Affidavit of Pat Mathus, filed January 31, 2003, ¶ 6; Affidavit of Hugh Mathus, filed January 31, 2003, ¶ 5. Finally, Plaintiff has submitted an affidavit from Katherine Maheu, a professional dance instructor, who claims that "Mrs. Willis' dancing cannot reasonably be construed as vulgar, lewd, or obscene." Affidavit of Katherine Maheu, filed January 31, 2003, ¶ 6. Maheu observed Plaintiff's dancing on a segment of the television show *Inside Edition*. *Id.*, ¶ 4.

The Committee chair, Retha Ward, and many others claim that members of the Committee repeatedly asked Plaintiff to modify her behavior at the events. Second Affidavit of Retha Ward, *attached to* Memorandum in Support of Defendant's Motion for Summary Judgment ("Defendant's Summary Judgment Memorandum"), filed October 6, 2003, ¶ 5; Second Affidavit of Ed Morton ("Second Morton Affidavit"), *attached to* Defendant's Summary Judgment Memorandum, ¶ 5. Mayor Dodson further claims that after Plaintiff received the letter, she came by his house requesting an opportunity to address the Town Board. He advised her to speak with the Town Clerk. Second Affidavit of John Dodson ("Second Dodson Affidavit"), *attached to* Defendant's Summary Judgment Memorandum, ¶ 14. The Town Clerk Darlyne Rhinehart avers that Plaintiff requested to be placed on the agenda for the next town meeting and Rhinehart did so. Affidavit of Darlyne Rhinehart, *attached to* Defendant's Summary Judgment Memorandum, ¶ 2. However, Kary Ledford, Administrative Assistant for Defendant, claims that Plaintiff subsequently phoned the Town Office and asked to be removed from the agenda. Affidavit of Kary Ledford, *attached to* Defendant's Summary Judgment Memorandum, ¶ 3.

Plaintiff claims that, prior to being excluded from the events, she received no notice of any charges and, following her exclusion, she was afforded no mechanism for appeal. First Affidavit of Rebecca Willis ("First Willis Affidavit"), filed January 31, 2003, ¶¶ 11, 14. However, in a subsequent affidavit, Plaintiff states that she and her attorney met with the Board of Aldermen and the Committee on September 12, 2001, and were unable to convince them to readmit Plaintiff to the events. Third Affidavit of Rebecca Willis ("Third Willis Affidavit"), filed October 6, 2003, ¶ 9.

## II. PROCEDURAL HISTORY

Plaintiff filed a complaint on September 20, 2002, and amended it on November 22, 2002. On December 2, 2002, the Defendant filed a motion to dismiss amended complaint. On September 5, 2003, the Court converted the Defendant's motion to dismiss to one for summary judgment pursuant to Fed.R.Civ.P. 56. Both parties filed memoranda giving their positions on the summary judgment issue on October 6, 2003. Plaintiff also filed a motion in the alternative for leave to conduct discovery.

## III. DISCUSSION

### A. Summary judgment standard.

Summary judgment is appropriate when there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party, here the Plaintiff. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). By reviewing substantive law, the Court may determine what matters constitute material facts. *Anderson, supra.* "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.* The Defendant as the moving party has the initial burden to show a lack of evidence to support the Plaintiff's case. *Shaw, supra* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If that showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does exist. *Id.* A "mere scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* Moreover, in considering the facts of the case for purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to the Plaintiff, as the nonmoving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. State action and "color of law."

 Plaintiff's claims are based on the First Amendment to the United States Constitution, as applied through the Fourteenth Amendment, on the Fourteenth Amendment itself, or on 42 U.S.C. §§ 1983 and 1985. Plaintiffs alleging Fourteenth Amendment violations must show that the conduct of which they complain "may be fairly characterized as 'state action.'" *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Similarly, plaintiffs making claims under §§ 1983 and 1985 must show that their constitutional rights were violated under color of law. *Id.; Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 166 n. 31, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Furthermore, "[i]f the challenged conduct ... constitutes state action [for Fourteenth Amendment purposes], then that conduct was also action under color of state law." *Lugar, supra,* at 935, 102 S.Ct. 2744. Therefore, if Defendant's actions were state action, it will be unnecessary to consider whether they were under color of law.

Cases explaining what constitutes state action "have not been a model of consistency." *Mentavlos v. Anderson,* 249 F.3d 301, 313 (4th Cir.2001) (quotations and citations omitted). Courts have noted that it is an "impossible task" to "fashion and apply a precise formula for recognition of state responsibility under the Equal Protection Clause," *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), and that the "inquiry is 'necessarily fact-bound.'" *Mentavlos, supra,* at 311 (quoting *Lugar, supra,* at 939). The Supreme Court stated that

> [w]hat is fairly attributable [to the state] is a matter of normative judgment, and the criteria lack rigid simplicity. From the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing rea-

son against attributing activity to the government.

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295–96, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001). One bit of guidance that the Supreme Court has given is that an entity may be treated as a state actor "when it is 'entwined with governmental policies,' or when government is 'entwined in [its] management or control.'" *Id.,* at 296, 121 S.Ct. 924 (quoting *Evans v. Newton,* 382 U.S. 296, 299, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966)) (alteration in original).

■ In the present case, there is much evidence that the Committee acted independently of Defendant in deciding to exclude Plaintiff from the events. Retha Ward, the Committee chair, stated in her affidavit that "[a]lthough appointed by the Town of Marshall, [the Committee members] have total charge and control of the Depot. [The members] independently generate all funds, and account to no one for those funds." Affidavit of Retha Ward, *attached to* Defendant's Opposition to Preliminary Injunction, ¶ 3. Many Committee members and Aldermen have given similar statements. *See, e.g.,* Affidavit of Everette Boone, *attached to* Defendant's Opposition to Preliminary Injunction, ¶ 3; Affidavit of Forrest Jarrett, *attached to* Defendant's Summary Judgment Memorandum, ¶ 3; Second Morton Affidavit, *supra,* ¶ 2. There is also evidence that the Aldermen never discussed Plaintiff's exclusion from the events until after the Committee had made its decision. Affidavit of R.B. McDevitt, *attached to* Defendant's Opposition to Preliminary Injunction, ¶ 6.

But there is also evidence that the Committee is not completely independent from the Town and that the Town was at least somewhat involved in the decision to exclude the Plaintiff from the events. First of all, the Committee is appointed by the Board of Aldermen. Amended Complaint, ¶ 10. The record is silent on the length of time that Committee members serve and what authority the Board of Aldermen has to replace Committee members. Also, the Mayor of Marshall sent the Plaintiff a letter on Town letterhead telling her that she was excluded from the events. *Id.,* ¶ 18; Answer to Amended Complaint, at ¶ 18. Even if the Mayor only wrote the letter to inform Plaintiff that the Committee did have the authority to ban her, the fact that the Mayor was involved indicates some level of entwinement. Affidavit of Bonnie Chandler, *attached to* Defendant's Summary Judgment Memorandum, ¶ 7. Furthermore, several affidavits indicate that, the Mayor, on behalf of the Committee, communicated to Plaintiff that she could continue to attend the events if she would modify her behavior. Second Affidavit of R.B. McDevitt, *attached to* Defendant's Summary Judgment Memorandum, ¶ 11; Second Affidavit of Everette Boone, *attached to* Defendant's Summary Judgment Memorandum, ¶ 10.

There is still further evidence of entwinement between the Defendant Town and the Committee. When Plaintiff sought to be readmitted to the events, she visited the Mayor at his home. He agreed to allow her to speak to the Town Board about being re-admitted. Second Dodson Affidavit, *supra,* ¶ 14. One could certainly infer that if the Town Board had absolutely no control over the Committee or its decisions, the Mayor would have indicated as much to Plaintiff instead of allowing her to address the Town Board.

Finally, Defendant's counsel has made statements indicating that the Defendant and the Committee are not wholly separate entities. In his September 7, 2001, letter to the Depot Committee, Defendant's attorney wrote that "the Town has the right to ban someone from its property

should it desire to do so, and clearly the Town has the right to continue to do so, if that is its wish." Exhibit E, Letter from Larry Leake to the Depot Committee, *attached to* Third Willis Affidavit. In the same letter, Defendant's attorney wrote to the Committee, "the purpose of this meeting is not for the Town Board or you to decide to allow Ms. Willis to attend the event at the Depot because of fear of litigation . . . ." *Id.* Obviously, that statement indicates that the Town Board had the power to re-admit Plaintiff. Also, in his May 29, 2002, letter to Plaintiff's counsel, Defendant's attorney wrote, "Governmental property owners certainly have the right to ban individuals from their property." Exhibit J, Letter from Larry Leake to Jonathan D. Sasser, dated May 29, 2002, *attached to* Third Willis Affidavit.

The evidence outlined above certainly supports the conclusion that Defendant is entwined with the management or control of the Committee. There is evidence that the Committee needs the Mayor to help it enforce its decisions and the Board of Aldermen had the authority to reverse the Committee's decision. There are also statements from the Defendant's counsel indicating that the decision to exclude Plaintiff from the events was a decision made by the Defendant. Following *Brentwood*'s pronouncement that "[e]ntwinement will support a conclusion that an ostensibly private organization ought to be

charged with a public character and judged by constitutional standards," the Court cannot issue summary judgment holding that the Committee's action was not state action.[1] *Brentwood, supra,* at 302, 121 S.Ct. 924.

Although precedent regarding questions of state action is anything but clear and consistent, the Court does find the case of *Lebron v. Nat'l R.R. Passenger Corp.,* 513 U.S. 374, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995), to be particularly relevant. In that case, the plaintiff brought a First Amendment claim against the National Railroad Passenger Corporation ("Amtrak"), a corporation established by Congress "to avert the threatened extinction of passenger trains in the United States." *Id.,* at 383, 115 S.Ct. 961. The Congressional statute providing for the creation of Amtrak required that six of the nine directors be named by the President of the United States. *Id.,* at 397, 115 S.Ct. 961. On the issue of state action, the Court held that "where . . . the Government creates a corporation . . . for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government." *Id.,* at 400, 115 S.Ct. 961. Here, although the Committee is not a corporation, the Town's government has clearly created an entity for the furtherance of governmental objectives.[2] Since *Lebron,* the case most

1. Although "the ultimate resolution of whether an actor was a state actor or functioning under color of law is a question of law for the court," "this determination need not always be made on summary judgment." *Goldstein v. Chestnut Ridge Volunteer Fire Co.,* 218 F.3d 337, 344 n. 7 (4th Cir.2000). In determining whether the actor was, in fact, a state actor, it is not necessary that "factual disputes . . . be resolved by the court." *Id.* In the present case, there are disputed facts, such as the amount of control that Defendant has over the Committee, and facts not addressed by

either party, such as the length of the Committee member's terms and the possibility of their removal, that preclude summary judgment on this issue.

2. Although nothing in the record states what Defendant's objectives were for creating the Committee, it would not have created the Committee if it were not to carry out some governmental objective. In this case, that objective could probably be described as providing a recreational outlet for citizens of Marshall and the surrounding areas.

directly on point, seems to indicate that such facts would subject the Committee to the restrictions placed on the government by the Constitution, this Court cannot hold on summary judgment that the Committee is not a state actor.

■ The Defendant could base an argument against this holding on the well established doctrine that "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *see also Rendell–Baker v. Kohn*, 457 U.S. 830, 839, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). These holdings seem to contradict the holdings of *Lebron* and *Brentwood* that entanglement between the government and the defendant, even without governmental coercion, is enough to render the defendant a state actor. But the cases may be reconciled by reasoning that the entanglement present in *Lebron*, *Brentwood*, and the present case keeps the decisions of the defendants from truly being private decisions. It is only when there is no such entanglement and the defendant's decision is, therefore, a "private" decision, that courts will inquire as to whether there was the governmental coercion or encouragement mentioned in *Blum, Rendell–Baker*, and *Flagg Bros.* But this holding does not rest on that reconciliation of the Supreme Court's cases. Since the current facts resemble the facts of *Lebron* more closely than the facts of any other case, the *Lebron* entanglement logic applies, and the Court cannot, at this point, rule that the Committee's decision was not state action under color of law.

Defendant inexplicably relies heavily on *Capital Area Right to Life, Inc. v. Downtown Frankfort, Inc.*, 511 U.S. 1135, 114 S.Ct. 2153, 128 L.Ed.2d 878 (1994) (O'Connor, J., dissenting). In doing so, Defendant fails to mention that the opinion to which it cites is not a majority opinion of the Supreme Court but rather the dissent of one Justice from the decision of the Court to deny *certiorari*. Even if the cited language were binding precedent, Defendant's argument would not be convincing because Justice O'Connor's dissent in *Capital Area* assumes that the alleged state actor is a private entity. The issue in that case is whether receiving a subsidy and access to a public forum from the government makes a private entity a state actor. *Id.*, at 2155. As explained above, there is evidence in the present case that the Committee is not a private entity but is actually dominated by Defendant. Therefore, even if *Capital Area* were binding precedent, it would be distinguishable.

## C. First Amendment

### 1. Freedom of expression.

■ Plaintiff claims that Defendant has deprived her of her First Amendment rights by preventing her from engaging in her style of dance at the events. The Supreme Court has explicitly held that "recreational dancing ... is not protected by the First Amendment." *City of Dallas v. Stanglin*, 490 U.S. 19, 25, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989). Likewise, the Fourth Circuit has held that "recreational dancing, although containing a 'kernel' of expression, is not conduct which is sufficiently communicative to bring it within the protection of the First Amendment." *D.G. Restaurant Corp. v. City of Myrtle Beach*, 953 F.2d 140, 144 (4th Cir.1991). These two cases defeat Plaintiff's claim that there is an unresolved issue as to

whether recreational dancing is protected by the First Amendment; it is not.

■ The parties devote numerous pages in their briefs to analysis of cases that involve nude and topless dancing as a form of adult entertainment. This discussion is irrelevant. Entertainment in the form of nude dancing receives First Amendment protection. *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 65–66, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *Davenport v. City of Alexandria, Va.,* 710 F.2d 148, 150 n. 6 (4th Cir.1983). However, the fact that *Stanglin* and *D.G. Restaurant* so explicitly hold that recreational dancing is not protected indicates a clear distinction between dancing to entertain others and dancing as a form of recreation. The former is protected; the latter is not.[3] Although Plaintiff asserts in her brief that she was a performer at the events, her complaint does not allege that she attended the events in a different capacity than other attendees. Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Amended Complaint, filed December 19, 2002, at 6. In short, there is no basis upon which a jury could conclude that Plaintiff was engaged in anything other than recreational dancing, an activity that is not protected by the First Amendment.

## 2. Freedom of association

■ Plaintiff also claims that excluding her from the events violated her freedom to associate with others as guaranteed by the First Amendment. The First Amendment protects the rights of individuals to associate with others in two senses. First,

it guarantees that individuals will be allowed to "enter into and maintain certain intimate human relationships." *Roberts v. United States Jaycees,* 468 U.S. 609, 617, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Second, it protects the "right to associate for the purpose of engaging in those activities protected by the First Amendment— speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.,* at 618, 104 S.Ct. 3244. *Stanglin* clearly stated that recreational dancing does not qualify as either type of protected association. In that case, the Court held that "[i]t is clear beyond cavil that dance-hall patrons ... are not engaged in the sort of 'intimate human relationships' referred to in *Roberts.*" *Stanglin,* 490 U.S. at 24, 109 S.Ct. 1591. The Court further held that, because there was "no suggestion that these patrons take positions on public questions or perform any ... other similar activities," their association was not protected as association for the purpose of engaging in First Amendment speech. *Id.,* at 25, 109 S.Ct. 1591 (internal quotation marks omitted).

■ In the dance halls discussed in *Stanglin* and at the events at issue here, there was undoubtedly *some* protected speech that occurred. However, just like in *Stanglin,* the predominant character of the events at the Depot was overwhelmingly recreational. In fact, Plaintiff herself describes the events as including "music and dancing, cakewalks, raffles, and general fellowship and camaraderie." Second Willis Affidavit, ¶ 2. Plaintiff further states

---

**3.** Courts outside this circuit have more explicitly noted this distinction. The Eleventh Circuit held that "we may take it for granted that nude dancing is constitutionally protected expression, at least if performed indoors before paying customers." *Int'l Food & Beverage Sys. v. City of Fort Lauderdale,* 794 F.2d 1520, 1525 (11th Cir.1986). Furthermore, another

district court has held that "recreational dancing does not come within the aegis of the First Amendment," but that "dancing that is part of a performance presented to others, may be a protected form of expression." *Wreck Bar, Inc. v. Comolli,* 857 F.Supp. 182, 186 (D.R.I.1994).

that the event attendees pass their evenings "listening to music, sipping soft drinks and eating snacks, and visiting with their friends and neighbors." *Id.,* ¶ 3. Since these events were recreational, *Stanglin* controls, and Plaintiff's attendance at the events is not protected by her right to free association.

### 3. Right to receive information

The Plaintiff further claims that excluding her from the events deprives her of a First Amendment right to receive information. The Plaintiff states that "the Depot is a source of ideas and thoughts communicated through song, dance, and ... collective conversations .... Mrs. Willis has a constitutionally protected right of access to that forum for the purpose of receiving the information, thoughts, and ideas expounded there." Plaintiff's Memorandum of Law Regarding Summary Judgment, filed October 6, 2003, at 5.

■ It is "well established that the Constitution protects the right to receive information and ideas." *Stanley v. Georgia,* 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). This right guarantees individuals some degree of access to places where information and ideas are expounded. *See Kreimer v. Bureau of Police for Town of Morristown,* 958 F.2d 1242 (3d Cir.1992). Plaintiff implicitly advances the notion that the government is subject to the same scrutiny in denying an individual access to a forum for the purpose of receiving information as it would be in denying an individual access to the same forum for the purpose of communicating that information. The *Kreimer* case supports this claim by finding that a library is a "limited public forum" and that the government, therefore, "is obligated only to permit [access such that] the public [may] exercise rights that are consistent with the nature of the Library." *Id.,* at 1262. The

Sixth Circuit adopted the exact same policy in *Neinast v. Bd. of Trustees of Columbus Metro. Library,* 346 F.3d 585, 591 (6th Cir.2003), as did a district court in the Fourth Circuit in *Mainstream Loudoun v. Bd. of Trustees of Loudoun County Library,* 24 F.Supp.2d 552, 563 (E.D.Va. 1998). Therefore, this Court will proceed assuming that a state actor who seeks to exclude a "recipient" from a forum in which ideas are exchanged is subject to the same level of scrutiny as a state actor seeking to exclude a speaker from such a forum.

■ Therefore, to determine the level of scrutiny with which to review the Defendant's actions, the Court must determine whether the Depot is a traditional public forum, a designated public forum, or not a public forum at all. *See Int'l Soc'y for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 678–79, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992) ("*ISKCI*"). The government does not create a public forum "whenever members of the public are permitted freely to visit a place owned or operated by the Government." *Greer v. Spock,* 424 U.S. 828, 836, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976). Rather, "the decision to create a public forum must instead be made 'by intentionally opening a nontraditional forum for public discourse.'" *ISKCI, supra,* at 680, 112 S.Ct. 2701 (quoting *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.,* 473 U.S. 788, 802, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)). Furthermore, the mere occurrence of protected speech activity within a forum does not necessarily render the forum public. *Cornelius,* at 805, 105 S.Ct. 3439.

■ Applying the Supreme Court's jurisprudence on what constitutes a "public forum," this Court concludes that the Depot, at least when being used to host the events, is a public forum only to a very limited extent. As noted above, even

Plaintiff's description of the events indicates that most of the activities that occur there are purely recreational in nature. Second Willis Affidavit, ¶¶ 3–4. However, as this Court stated in its previous Memorandum and Order, some protected speech undoubtedly occurs at the events, and the Town did intentionally open the Depot for, if nothing else, the protected speech activity of musical performances. Therefore, Plaintiff does have a limited First Amendment right of access to the Depot for the purpose of receiving the speech for which the forum was designated—most notably, to listen to the music.

However, "[t]he Supreme Court has indicated that restrictions that do not limit those First Amendment activities the government has specifically permitted in the designated public forum need only be 'reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Kreimer, supra* (quoting *United States v. Kokinda,* 497 U.S. 720, 721, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990)) (internal quotation marks and citation omitted.) Certainly, to exclude Plaintiff because Defendant received complaints about her conduct and attire is reasonable and completely unrelated to the viewpoints to which Plaintiff, as a recipient of speech, may be exposed at the events. As such, Defendant did not deprive Plaintiff of any constitutional right by excluding her from the events; Defendant merely regulated her conduct.

### 4. Overbreadth and vagueness

Plaintiff claims that the standards the Defendant used to determine that her conduct was inappropriate and that she should be banned were vague and overbroad. To the extent that Plaintiff is claiming that any unwritten rule or standard is impermissibly vague and overbroad, her claims are analyzed below where the Court considers whether Plaintiff was denied her right to procedural due process. Here, the Court will address Plaintiff's vagueness and overbreadth claims as they relate specifically to protected First Amendment activity.

■ Central to this vagueness and overbreadth analysis is the fact that Plaintiff was not engaged in any constitutionally protected expressive conduct. Therefore, Plaintiff's assertion of the rule that "statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society" is irrelevant. *Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Whatever rule or standard Defendant relied on in excluding Plaintiff from the events was not one that attempted "to restrict or burden the exercise of First Amendment rights" since recreational dancing is not protected by the First Amendment. *Stanglin,* 490 U.S. at 26, 109 S.Ct. 1591. Therefore, Plaintiff may not rely on the extensive jurisprudence regarding vague and overbroad laws that chill First Amendment activity.

### D. Due process

#### 1. Substantive due process

■ Plaintiff claims that her banishment from the Depot deprives her of her substantive due process right to freedom of movement and travel. The Supreme Court has held that "[f]reedom to travel is, indeed, an important aspect of the citizen's 'liberty.'" *Kent v. Dulles,* 357 U.S. 116, 127, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958). However, the cases that Plaintiff cites all involve restrictions on movement and travel that actually impede an individual's ability to move freely from nation to nation or neighborhood to neighborhood. Such re-

strictions are not even close to being analogous to the present restriction which simply prohibits Plaintiff from entering one particular building. Certainly there is no constitutional right to be present on all property owned by the government. Therefore, Plaintiff's substantive due process claim fails.

## 2. Procedural Due Process

■■■■ Plaintiff asserts that being excluded from the events pursuant to an allegedly vague, unwritten rule, without a hearing or appeal deprived her of her right to procedural due process guaranteed by the Fourteenth Amendment. "[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Henderson v. Simms*, 223 F.3d 267, 274 (4th Cir.2000) (quoting *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (internal citation omitted)). "Protected liberty interests 'may arise from two sources—the Due Process Clause itself and the laws of the States.'" *Id.* (quoting *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)).

■■■ Plaintiff claims that the liberty interests of which she has been deprived are the constitutional rights discussed above. But for the reasons already explained, Plaintiff had no constitutional right to dance at the events or to associate with the other attendees. While Plaintiff may have had a First Amendment right to hear the music at the events, Defendant did not deprive her of that right by excluding her because of complaints based solely on her conduct. Plaintiff also asserts that being excluded from the events deprives her of "freedom of physical restraint." Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Amended Complaint, at 15. But Plaintiff remains free to move about and travel as she wishes. Therefore, she has not been subjected to "physical restraint" within the meaning of the Constitution or of common sense. Since Plaintiff has been deprived of no constitutional right, and since the record shows no statutory right to be present at the events, Plaintiff has not been deprived of a liberty interest. Without such a deprivation, Plaintiff has no procedural due process claim whether it is based upon not being afforded a hearing or appeal or upon the alleged vagueness of the standards that guided Defendant.

Even if Plaintiff had been deprived of a liberty interest, the facts do not support her claim that she was not afforded due process. Defendant has submitted affidavits claiming that Defendant offered Plaintiff a chance to address the Aldermen at a town meeting in December of 2000 and that Plaintiff removed her name from the agenda. Rhinehart Affidavit, *supra*, ¶ 2; Ledford Affidavit, *supra*, ¶ 3. Plaintiff did, in fact, meet with the Marshall Town Board and Depot Committee on September 12, 2001. Plaintiff states that, despite her best efforts and those of her lawyer, the Board of Aldermen and the Committee "persisted in their decision to ban [her] from the Friday night events." Third Willis Affidavit, *supra*, ¶ 9. Therefore, Plaintiff's own statements contradict her claim that she was "afforded no mechanism for appeal." Willis Affidavit, *supra*, ¶ 14. Certainly, a chance to appeal her decision to the Committee and the Board of Aldermen is sufficient to satisfy the requirements of due process. *See Shirley v. Drake*, 176 F.3d 475 (table), 1999 WL 202671, *4 n. 3 (4th Cir.1999) ("even when the state has infringed upon a protected

liberty interest, there is no due process violation if the state ... has sufficient post-deprivation remedies.").

### E. Equal protection

■ Plaintiff alleges that Defendant violated the Fourteenth Amendment by denying her equal protection when it excluded her from the events. To make a case that a "class of one" has been denied equal protection, the Plaintiff must allege that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Although Defendant claims the Plaintiff should be required to show that personal ill-will or animus motivated Defendant's decision, the Fourth Circuit has interpreted Supreme Court precedent as not calling for such a showing. *McWaters v. Cosby,* 54 Fed.Appx. 379, 382–83 (4th Cir.2002) ("The Court clarified that the irrationality allegation was separate from the actual subjective motivation of the [Defendant] ... and that the irrationality allegation was sufficient") (internal citation omitted).

■ Therefore, the issue is whether Plaintiff has offered evidence from which a reasonable jury could infer that the Defendant intentionally treated Plaintiff differently from other, similarly situated, individuals and that Defendant had no rational reason for doing so. Plaintiff does not dispute and the evidence overwhelmingly supports the conclusion that some people in attendance complained to members of the Committee regarding Plaintiff's behavior. Boone Affidavit, *supra,* ¶ 13; Allen Affidavit, *supra,* ¶ 5; Affidavit of Hattie Nix, *attached to* Defendant's Opposition to Preliminary Injunction, ¶ 5. Plaintiff alleges that Defendant banned her "for the simple reason that others at the Marshall Depot did not approve of the message [she] conveyed." Amended Complaint, at ¶ 20. This allegation implies that complaints from other event attendees affected the decision to ban Plaintiff. Even if other people danced similarly to Plaintiff, there is no evidence that Defendant received complaints regarding their behavior. Therefore, Defendant did not irrationally treat Plaintiff differently from anyone else. Defendant received complaints regarding only Plaintiff's behavior and took action only against Plaintiff. As such, Plaintiff has no valid claim for deprivation of equal protection of the laws.

### F. Sections 1983 and 1985 claims

Since Plaintiff has been deprived of no Constitutional rights, her claims based on §§ 1983 and 1985 must be dismissed.

### G. Motion for leave to conduct further discovery.

Since Plaintiff provides no support for a conclusion that she has suffered any constitutional deprivation, and since there is ample evidence to show that Defendant had a rational basis for all of its challenged actions, further discovery in this case would be fruitless.

### IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motion for summary judgment is hereby **ALLOWED**; a Judgment dismissing this action is filed herewith.

**IT IS FURTHER ORDERED** that the Plaintiff's motion for leave to conduct further discovery is hereby **DENIED** as moot.

### *JUDGMENT*

For the reasons set forth in the Memorandum of Opinion filed herewith,

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that the Defendant's motion for summary judgment is **ALLOWED,** and this matter is hereby **DISMISSED WITH PREJUDICE** in its entirety.