PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

SUNRISE CORPORATION OF MYRTLE
BEACH; BOULEVARD DEVELOPMENT
LLC; S&H DEVELOPMENT, INC.,
                *Plaintiffs-Appellants,*

v.

THE CITY OF MYRTLE BEACH; MARK
MCBRIDE, Individually; JUDY
RODMAN, Individually; RACHAEL
BROADHURST, Individually; CHARLES          No. 04-2171
MARTINO, Individually; WILSON
CAIN, Individually; CRAIN WOODS,
Individually; LARRY BRAGG,
Individually; TOM CONN,
Individually; TOM DAVIS,
Individually; SALLY HOWARD,
Individually; FRED ROURK,
Individually,
                *Defendants-Appellees.*

Appeal from the United States District Court
for the District of South Carolina, at Florence.
C. Weston Houck, Senior District Judge.
(CA-99-132-12)

Argued: May 25, 2005

Decided: August 26, 2005

Before WIDENER, WILKINSON, and NIEMEYER, Circuit Judges.

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Judge Wilkinson and Judge Niemeyer concurred.

## COUNSEL

**ARGUED:** Howell V. Bellamy, Jr., BELLAMY, RUTENBERG, COPELAND, EPPS, GRAVELY & BOWERS, P.A., Myrtle Beach, South Carolina, for Appellants. Frances Isaac Cantwell, REGAN & CANTWELL, Charleston, South Carolina, for Appellees. **ON BRIEF:** Douglas M. Zayicek, BELLAMY, RUTENBERG, COPELAND, EPPS, GRAVELY & BOWERS, P.A., Myrtle Beach, South Carolina, for Appellants. William B. Regan, REGAN & CANTWELL, Charleston, South Carolina; L. Gregory Cook Horton, Adriane Malanos Belton, BUIST, MOORE, SMYTHE & MCGEE, P.A., Charleston, South Carolina, for Appellees.

## OPINION

WIDENER, Circuit Judge:

Plaintiffs, Sunrise Corporation of Myrtle Beach, Boulevard Development LLC, and S&H Development, Inc. (collectively Sunrise),[1] appeal from the district court's granting of defendant the City of Myrtle Beach's (Myrtle Beach) motions for summary judgment.[2] In the underlying case Sunrise was seeking damages for violations of the Due Process, Equal Protection and Takings Clauses of the Constitu-

---

[1]The district court dismissed plaintiffs Sunrise Corporation and S&H Development, Inc. for lack of prudential standing, which is one of the issues plaintiffs argue on this appeal. Under *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 239 (4th Cir. 1988)(citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)), when the contested basis for jurisdiction is also an element of the plaintiff's federal claim, the claim should not be dismissed for lack of jurisdiction. The contested basis for jurisdiction in this case is whether there was an injury in fact, which is also an element of their federal claim. Accordingly we find that the district court erred in dismissing Sunrise and S&H for lack of prudential standing, and should have addressed the objection as an attack on the merits, as do we. *Rivana*, 840 F.2d at 239.

[2]There were a number of individual defendants in the case below, Sunrise, however, has abandoned the claims against the individual defendants.

tion under 42 U.S.C. § 1983, attorney's fees under 42 U.S.C. § 1988, and inverse condemnation. Finding that Sunrise is not entitled to any remedy, we affirm.

I.

In 1996, shortly after all three plaintiffs were formed, plaintiffs purchased the St. John Inn and surrounding land, an 88-unit hotel and restaurant located on 2.65 acres in the City of Myrtle Beach, looking to further development. Sunrise then examined the zoning regulations, decided on a proposal for a 14-story tower with 98-units, obtained financing, entered negotiations with a builder, and began to execute contracts to pre-sell individual units in the new tower.

Myrtle Beach's esthetic zoning laws require that every new construction requires approval of the Community Appearance Board before a building permit would issue, even if the plans complied with all zoning regulations. Myrtle Beach Code Appx. A § 603.1. Under this law, the Board is to consider preservation of the landscape; relation of the proposed buildings to the environment; drives, parking, and circulation; surface water drainage; utility service; advertising features; special features; and application of design standards. Myrtle Beach Code Appx. A § 604. If the Board denies the proposal, the applicant can appeal to the City Council, Myrtle Beach Code Appx. A § 606, which reviews the proposal *de novo*. Myrtle Beach Code Appx. A § 606.2. If the City Council affirms the Board, the applicant has the right to appeal to the Circuit Court in and for Horry County.[3] Myrtle Beach Code Appx. A § 606.2.

In mid 1998, Sunrise applied for a permit to build the new hotel. They then submitted to the Board a proposal that complied with all of the zoning ordinances. The Board suggested changes to the proposal and later held a second hearing. This hearing was attended by residents of the area who voiced opposition to Sunrise's proposal. After the hearing, the Board denied the proposal, citing section 604 of the City Code. Sunrise then appealed the Board's decision to the City Council and was granted a hearing where area residents again

---

[3]The Circuit Court may be referred to as the Court of Common Pleas. They are the same court.

voiced opposition to the proposal. Five days later the City Council denied the proposal because of its view that the proposal violated sections 601 and 604 of the City Code. Plaintiffs then appealed the decision of the City Council to the Circuit Court.

While the appeal of the City Council's decision was still pending, plaintiffs brought the instant action in the Court of Common Pleas of Horry County, a state court, seeking to recover their pre-development costs as well as lost profits from the pre-sale of units in the proposed tower. The complaint asserted causes of action against the City Council as well as several individual members of the Board. The complaint sought damages under 42 U.S.C. § 1983 for violations of the Due Process, Equal Protection, and Takings Clauses; 42 U.S.C. § 1988 for attorney's fees; and inverse condemnation under South Carolina state law. The defendants then removed the case to federal district court. The parties agreed to stay this action until the resolution of the state court appeal of the City Council's denial of plaintiffs' proposal.

On May 13, 1999, the Court of Common Pleas issued an order reversing the decision of the City Council withholding the permit, finding that Myrtle Beach's decision violated the holding of *Peterson Outdoor Advertising v. City of Myrtle Beach*, 489 S.E.2d 630 (S.C. 1997)(Board's denial of proposal must be based on application of the City Code to the facts of the case), because it was arbitrary, subjective, without evidentiary support, an abuse of discretion, and a denial of plaintiffs' due process and equal protection rights. The court then determined that re-application would be futile and ordered Myrtle Beach to issue the permit to Sunrise. At some point in 1999, plaintiffs sold the site for approximately four million dollars.

Myrtle Beach appealed the Court of Common Pleas' decision to the South Carolina Court of Appeals, which affirmed in 2001. An appeal was then taken by Myrtle Beach to the Supreme Court of South Carolina, which initially granted certiorari, but later dismissed the writ as improvidently granted. At that point defendants made the permit available to plaintiffs.

After the Supreme Court of South Carolina dismissed the writ of certiorari, the district court lifted its stay in this case, and both parties later filed motions for summary judgment. At the hearing on the

motions, the district court denied plaintiffs' motion for summary judgment which contended that the South Carolina Court of Appeals decision was res judicata of their § 1983 due process and equal protection claims, as well as granted defendants' motion for summary judgment on those same claims. The district court also reserved ruling on the rest of defendants' motion. Plaintiffs then filed a motion for reconsideration. The district court held a hearing on that motion, after which it improvidently dismissed two of the plaintiffs for lack of prudential standing,[4] denied plaintiffs' motion for reconsideration, and granted the defendants' motion for summary judgment as to the takings and inverse condemnation claims.

## II.

On appeal, plaintiffs advance five arguments as to how the district court allegedly erred. First plaintiffs assert that the district court erred by holding that Myrtle Beach was not barred by res judicata from arguing that it had not violated plaintiffs' due process, equal protection and Fifth Amendment rights. Second, plaintiffs argue that the district court erred in holding that Sunrise Development and S&H Development, Inc. did not have prudential standing.[5] Third, plaintiffs assert that the district court erred in dismissing their due process claims and argue the Board's actions were illegitimate under the guise of the esthetic ordinance. Fourth, plaintiffs argue that the district court erred by dismissing their Equal Protection claim because they failed to present evidence as to being similarly situated and the victim of illegitimate discretion. Lastly, plaintiffs assert that the district court erred in dismissing their takings and inverse condemnation claims by holding that their intended use of the property was not an antecedent property right and that the delay was caused by the time required to get judicial review.

We review *de novo* a district court's grant of summary judgment. *Temkin v. Fredrick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991). Summary judgment under Rule 56(c) is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on

[4]See n.1, supra.

[5]See n.1, supra.

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986).

### III.

Plaintiffs assert that the district court erred by not applying the doctrine of res judicata to bar Myrtle Beach from arguing that its actions did not violate their Constitutional rights. The judgment they argue should be given res judicata effect is the decision of the Common Pleas Court which stated that Myrtle Beach's actions were "arbitrary, subjective, without evidentiary support, an abuse of discretion, merely a pretense to stop development, and a denial of Plaintiffs' due process and equal protection rights."

Under 28 U.S.C. § 1738, federal courts must give full faith and credit to state court judgments. This includes the application of state preclusion rules to determine whether a prior state court judgment has res judicata effect in a § 1983 action. *Dionne v. Mayor and City Council of Baltimore*, 40 F.3d 677, 682 (4th Cir. 1994). Under South Carolina law, to establish res judicata a party must show "(1) identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue in the former suit." *Plum Creek Dev. Co., Inc. v. City of Conway*, 512 S.E.2d 106, 109 (S.C. 1999).

Even if we consider the requirement of identity of the subject matter to be satisfied, which is not at all certain, the federal Constitutional rights of due process and equal protection were not adjudicated in the South Carolina Court of Appeals.[6] That proceeding was nothing other than a court review of an administrative determination by local zoning authority. That court summarized its decision as follows: "We conclude the decision of City Council was arbitrary because it was based, not on the evidence in the record and the esthetic concerns of the CAB's ordinance, but upon the objections of citizens of the neighborhood who wanted to stop further development in the area." JA 425. This decision is an indication of a mistake by the local zoning authori-

---

[6]We apply that decision, not the decision of the Court of Common Pleas.

ties and hardly conclusive evidence, even if evidence at all, of a violation of due process and equal protection rights. It is no indication that such federal Constitutional rights were decided in the decision of the South Carolina Court of Appeals, and we so hold.

IV.

Plaintiffs next assert that the district court erred in dismissing their due process claims. To establish a violation of procedural due process, plaintiffs must show that (1) they had property or a property interest (2) of which the defendant deprived them (3) without due process of law. *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 826 (4th Cir. 1995). To establish a violation of substantive due process, plaintiffs must "demonstrate (1) that they had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental authority that no process could cure the deficiency." *Sylvia Dev. Corp.*, 48 F.3d at 827 (citing *Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir. 1995))(emphasis in original).

We are of opinion that plaintiffs received due process, both procedural and substantive. Plaintiffs claim that their due process rights were violated because the hearings they received were unfair. Even if true, which we do not decide, this does not change the fact that plaintiffs received four levels of review, in each of which they were permitted to present their side of the controversy.[7] In cases such as this we review the state process as a whole, and do not look only to what happened in front of the Board. See e.g. *Tri County Paving, Inc. v. Ashe County*, 281 F.3d 430, 437 (4th Cir. 2002)(a "due process violation actionable under § 1983 is not complete when the deprivation occurs; it is only complete if and when the State fails to provide due process")(quoting *Fields v. Durham*, 909 F.2d 94, 98 (4th Cir. 1990)). While it is true that there were several levels of judicial and administrative review, plaintiffs received the very remedy they sought, the permit to develop the property. Indeed, the very extent of review is

---

[7]The decision by the Board was reviewed by the City Council, then the Court of Common Pleas, then the South Carolina Court of Appeals, and finally the South Carolina Supreme Court.

an indication of the existence of procedural due process, rather than its absence. Costs incurred securing a permit are part of the process, and we have never held them to be compensable. Plaintiffs also assert that the state court's determination of arbitrariness entitles them to damages under § 1983. But we have made it clear that a violation of state law is not tantamount to a violation of a federal right, *Sylvia Dev. Corp.*, 48 F.3d at 829.[8]

Accordingly, we find that the district court did not err in dismissing plaintiffs' due process claims.

V.

Plaintiffs next assert that the district court erred by dismissing their equal protection claim by holding that they failed to present evidence as to being similarly situated and the victim of illegitimate discretion. Sunrise bases this argument on *Tri County Paving*, where we said that a party can bring an equal protection claim by alleging that it had been intentionally treated differently from others similarly situated and that there was no rational basis to support the different treatment. 281 F.3d at 439 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Plaintiffs essentially argue that because their high rise building was denied while other high rises were approved, a case for violation of equal protection exists. Under our rule in *Sylvia Dev. Corp.* to support this claim, plaintiffs had to show that the classification, that of a high rise, was the basis of Myrtle Beach's decision, and that this fact prompted Myrtle Beach to engage in intentional, purposeful discrimination. 48 F.3d at 820. While plaintiffs did present evidence that there were other high rises in Myrtle Beach, they failed to present evidence that their project was rejected because it was a high rise. The evidence in the record explaining why the project was rejected was the order of the City Council which rejected the project because of its failure to discourage monotonous, drab or unsightly development, to conserve natural beauty, to give proper attention to exterior appearance, and properly relate to its site.

---

[8]Our reasoning in *Sylvia* applies here, and we apply it: "The fact that established state procedures were available to address and correct illegal actions by the Board belie the existence of a substantive due process claim." *Sylvia*, 48 F.3d at 829.

Even if we were to determine that plaintiffs' project was similarly situated to other projects, they would still need to show purposeful discrimination. If disparate treatment alone was sufficient to support a Constitutional remedy then every mistake of a local zoning board in which the board mistakenly treated an individual differently from another similarly situated applicant would rise to the level of a federal Constitutional claim. *Sylvia Dev. Corp.* 48 F.3d at 825 (citing *Snowden v. Hughes*, 321 U.S. 1, 11-12 (1994)). There is no evidence in the record that Sunrise was subjected to purposeful, invidious discrimination. At most the evidence shows that the public was opposed to the project for a number of reasons, some relevant to Board review and some not. This evidence that the Board and City Council responded to the public opposition does not rise to the level of a Constitutional violation, because we have recognized that matters of zoning are inherently political, and that it is a zoning official's responsibility to mediate disputes between developers, and local residents. *Sylvia Dev. Corp.* 48 F.3d at 828.

Similar to the plaintiffs in *Sylvia Dev. Corp.*, the plaintiffs here at most could prove that similarly situated developers were treated differently, without an adequate evidentiary basis for the differing treatment. Even if this is good grounds for an appeal under state law, it does not give rise to a claim for a violation of equal protection. *Sylvia Dev. Corp.*, 48 F.3d at 825. Accordingly, we are of opinion that the district court did not err in dismissing plaintiffs' equal protection claim.

## VI.

Plaintiffs' final argument is that the district court erred in dismissing their takings and inverse condemnation claims by holding that the lawful use of property was not an antecedent property right, and that the delay was only an unfortunate by-product of the adjudicatory system. Under South Carolina law federal takings law is incorporated as an element of an inverse condemnation action. *Sea Cabins on the Ocean IV Homeowners Association, Inc. v. City of North Myrtle Beach*, 548 S.E.2d 595, 601 (S.C. 2001). Accordingly these two issues are both resolved by a finding that the City's actions here did not constitute a taking under federal law. There are two distinct types

of taking under federal law, categorical and regulatory.[9] Because Myrtle Beach in this case neither physically took possession of any part of the property, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), nor denied plaintiffs all economically viable use[10], *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1016 (1992), this case would not be a categorical taking.

A regulatory taking occurs when a regulation or limitation on land use interferes with a landowner's rights but does not deprive the land of all economically viable use. See generally *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978). The analysis in a takings case necessarily begins with determining whether the government's action actually interfered with the landowner's antecedent bundle of rights. *See Lucus*, 505 U.S. at 1027 (discussing how property rights are a "bundle of rights"). If, as the district court found, there was no interference with this bundle of rights, there is no taking.

Plaintiffs contend that there was interference with their antecedent property rights because their proposal complied with all of the zoning ordinances in force at the time, and thus they were entitled to the permit. But the plaintiffs ignore the fact that under the applicable law they were required to not only comply with the zoning ordinances, but also to secure Board approval under Myrtle Beach Code Appx. A § 603.1. Myrtle Beach Code Appx. A § 603.1 is as certainly a part of the City's zoning law as any other land use ordinance. Accordingly, they had no right to proceed with the project until they received the Board's approval.

As a general rule, a delay in obtaining a building permit is not a taking but a non-compensable incident of ownership. *Agins v. City of Tiburon*, 447 U.S. 255, 263 n. 9 (1980)("Mere fluctuations in value during the process of governmental decision making, absent extraor-

---

[9]The South Carolina court in *Sea Cabins* refers to the same as physical and regulatory. 548 S.E.2d at 601.

[10]The City did not deny plaintiffs all economically viable use because the original inn and restaurant remained open while this case was pending. Nor were the plaintiffs deprived of any use they sought which conformed with the City zoning laws. The sought-for permit issued.

dinary delay, are 'incidents of ownership'"). Plaintiffs contend that this case is an example of the extraordinary delay referred to in *Agins*.

But the delay at issue in this case was not extraordinary. Plaintiffs first applied for Board approval in August of 1998. By that November they had been through the entire process twice. At no point did defendants take more than 15 days to issue their final decisions. The bulk of the delay that plaintiffs claim was extraordinary was a result of the process to appeal the defendants' decision. There is nothing in the record to suggest that defendants had any control over how quickly the case moved under state law through the various judicial appeals processes, or that the defendants acted in bad faith or engaged in deliberate delay during that process. Accordingly, any delay was nothing more than the law's delay as lamented for some 400 years, and not an extraordinary delay that could give rise to Constitutional implications.

The judgment of the district court is accordingly

*AFFIRMED*.