UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1404

REBECCA WILLIS,

Plaintiff - Appellant,

v.

TOWN OF MARSHALL, NORTH CAROLINA, a corporation of the State
of North Carolina,

Defendant - Appellee.

Appeal from the United States District Court for the Western
District of North Carolina, at Asheville.   Lacy H. Thornburg,
District Judge.   (1:02-cv-00217)

Argued:  March 26, 2008                Decided:  April 30, 2008

Before WILLIAMS, Chief Judge, TRAXLER, Circuit Judge, and David C.
NORTON, Chief United States District Judge for the District of
South Carolina, sitting by designation.

Affirmed in part; reversed and remanded in part by unpublished per
curiam opinion.

**ARGUED:** Jonathan Drew Sasser, ELLIS & WINTERS, L.L.P., Raleigh,
North Carolina, for Appellant.   Larry Leake, Asheville, North
Carolina; Sandra Moody King, RUSSELL & KING, Asheville, North
Carolina, for Appellee.   **ON BRIEF:** Thomas H. Segars, ELLIS &
WINTERS, L.L.P., Raleigh, North Carolina; Marc C. Tucker, SMITH
MOORE, L.L.P., Raleigh, North Carolina; Katherine Lewis Parker,
AMERICAN CIVIL LIBERTIES UNION OF NORTH CAROLINA, Raleigh, North
Carolina, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The Town of Marshall, North Carolina, hosts regular Friday-night concerts at the Marshall Depot, the Town's community center. Rebecca Willis enjoyed attending the Friday-night events and dancing to the music provided by local bands. The Town eventually banned Willis from the Depot upon the recommendation of the committee in charge of the events. As a result, Willis filed this § 1983 suit in federal district court, asserting a number of constitutional claims and seeking a preliminary injunction requiring the Town to lift the ban. The district court denied Willis's motion for a preliminary injunction and subsequently granted summary judgment in the Town's favor. On appeal, we affirmed the grant of summary judgment on most claims, but vacated and remanded regarding a class-of-one equal protection claim. On remand, the parties conducted further discovery, and the district court again granted summary judgment against Willis. Willis now appeals that order as well as an order declining to sanction the Town for certain discovery-related conduct. As we explain below, we affirm the denial of the sanctions motion but reverse the grant of summary judgment and remand for further proceedings.

I.[1]

A.

In the center of the Town of Marshall is the Marshall Depot, a former railroad depot leased by the Town for use as a community center. A committee ("the Committee") appointed by the Town's Board of Aldermen ("the Board") coordinates events at the Depot. On Friday nights the Town opens the Depot and sponsors musical entertainment, permitting local groups to sign up for playing time. The Friday-night events are for the benefit of the public and are attended by community members of all ages. During the concerts, the musicians perform on a stage, which is located in front of rows of auditorium-style seats where people can sit and listen to the music. There is no real dance floor in the Depot, but there is a small area off to the side of the stage and seating area where people often dance.

Posted on the back wall of the Depot is a list of the Depot's "Rules of Behavior" stating:

    (1)  No Drinking (Alcoholic Beverages);

    (2)  No Smoking;

    (3)  Shoes and Shirts Required;

    (4)  No Sitting on Rails;

    (5)  No Blocking Doors;

---

[1]Our summary of the facts is taken, in large part, from our prior opinion relating to this case. See Willis v. Town of Marshall, 426 F.3d 251, 253-56 (4th Cir. 2005).

(6)  No Cases or Instruments Left on Deck;

(7)  No Jamming Inside Depot or on Deck;

(8)  No Unsupervised Children Allowed to Run Loose Around Building; and

(9)  No Soliciting.

J.A. 89 (internal quotation marks omitted).  There are no other posted rules or regulations regarding dress or appropriate behavior at the Depot.

Willis lives in Madison County, North Carolina, just outside the boundaries of Marshall.  She regularly attended the Friday-night concerts, where she particularly enjoyed dancing. According to the Town's evidence, Willis danced in a sexually provocative manner--gyrating and simulating sexual intercourse with her partner while "hunch[ed]" on the floor.  J.A. 53, 56.  Some of the Town's evidence indicates that Willis wore very short skirts and would frequently bend over while dancing, exposing her underwear, her buttocks, and her "private parts."  J.A. 76.

Some community members, concerned about their children being exposed to Willis's dancing, complained to members of the Committee.  The Town contends that Committee members repeatedly asked Willis to dance in a less provocative manner.  These requests were allegedly met with defiance.  The Town maintains that rather than toning down her dancing, Willis began to dance even more provocatively.

Willis takes issue with the Town's view of the facts. Willis describes her style of dance as "exuberant[] and flamboyant[]," J.A. 15, but not inappropriate in any way. Willis acknowledges that she wore short skirts to the Depot, but she contends that she always wore underwear and pantyhose and thus could not have exposed her "private parts." According to Willis, she received only one warning from a Committee member concerning her conduct at the Depot. That occurred when Retha Ward told her one night at the Depot, without elaborating, to "cool it." J.A. 78 (internal quotation marks omitted). Willis contends that the only other person to give her any "warning" later told her that she was only kidding.

In any event, the Committee ultimately decided to ban Willis from attending events at the Depot. This decision was conveyed to Willis by way of a letter from the Town's mayor. The letter, dated December 12, 2000, stated: "Due to the inappropriate behavior exhibited by you and having received previous warnings from the Marshall Depot Committee it is the consensus of the Committee that you are banned from the Marshall Depot. This action is effective as of today's date." J.A. 45.

After receiving the banishment letter, Willis contacted an attorney. Her attorney conveyed to the Board Willis's willingness to apologize for any prior inappropriate behavior, to conduct herself properly, and to abide by any dress code that might be

-6-

adopted if she were permitted to return to the Depot. The Board declined to lift the banishment, and this action followed.

In her complaint, Willis alleged that the Town violated her substantive due process rights by permanently banishing her from a public forum; that the Town violated her First Amendment rights of free expression, of association, and to receive information by banning her from the Depot; that the Town deprived her of a liberty interest without affording her adequate procedural protections; that the authority upon which the Town relied to banish her was unconstitutionally vague and overbroad; and that the Town denied her equal protection of the law by singling her out for banishment ("the equal protection claim"). Willis also sought entry of a preliminary injunction requiring the Town to permit her to return to the Depot. The Town filed a motion to dismiss, and the matter was referred to a magistrate judge for a report and recommendation.

The magistrate judge recommended that the motion to dismiss be denied except as to Willis's claim that her associational rights were violated. The magistrate judge also recommended that Willis's motion for a preliminary injunction be granted. The Town objected to the magistrate judge's report and recommendation.

The district court considered the Town's objections and entered an order denying the motion for a preliminary injunction. And while the Town had yet to file an answer and no discovery had

been ordered, the district court directed that the Town's motion to dismiss would be converted to a motion for summary judgment. The court gave the parties thirty days to file any additional materials relevant to consideration of the summary judgment question.

Thirty days after the district court's order converting the motion to dismiss to a motion for summary judgment, the Town submitted a memorandum in support of the granting of summary judgment, along with additional affidavits. That same day, Willis filed her memorandum opposing summary judgment, along with additional affidavits and exhibits. Willis also submitted an affidavit under Rule 56(f) of the Federal Rules of Civil Procedure, alleging summary judgment was premature because she did not have the opportunity to seek discovery on her claims. The affidavit sufficiently informed the district court of the discovery Willis needed to oppose the motion for summary judgment.

The district court thereafter granted summary judgment in favor of the town. See Willis v. Town of Marshall, 293 F. Supp. 2d 608, 622 (W.D.N.C. 2003). The only claim relevant to the present appeal is the equal protection claim, which the court disposed of by noting that there was no evidence of persons similarly situated to Willis who were treated more favorably by the Town because the record demonstrated that several attendees complained about Willis and there was no evidence that there were complaints about anyone else. See id. at 621. As to Willis's Rule 56(f) motion for

additional discovery, the district court concluded that because the summary judgment record established that the Town "had a rational basis for all of its challenged actions, further discovery in this case would be fruitless."  Id.

On appeal, we affirmed the grant of summary judgment except with regard to the equal protection claim.  See Willis v. Town of Marshall, 426 F.3d 251, 267 (4th Cir. 2005).  As to that claim, we concluded that Willis's allegations that she did not dance inappropriately and that she was singled out for punishment while others who danced or dressed similarly were not punished were sufficient to support her claim.  See id. at 263-64.  We explained, based on the evidence in the record at the time, that "[a]mong other things, Willis notes that the Town submitted affidavits from community members who stated that Willis and a dance partner 'would hunch on the floor, simulating sexual intercourse.'  The Town, however, banned only Willis; no action was taken against her unnamed partner."  Id. at 263 (citation omitted).  We ruled that the absence of evidence that the Town received complaints concerning any Depot attendee other than Willis did not justify the grant of summary judgment.  See id. at 263-64.  In this regard, we reasoned that "[e]ven assuming that the absence of complaints about others would establish that Willis was not similarly situated to the other patrons," that absence did not authorize the grant of summary judgment in light of the fact that the existence of such

complaints was "a matter wholly within the knowledge of the Town" and Willis had not had the opportunity to conduct discovery regarding that issue.  Id. at 263.  Because Willis had alerted the district court of the need for such discovery through a Rule 56(f) affidavit, we concluded that the district court had abused its discretion in denying such discovery.  See id. at 264.  We therefore vacated the grant of summary judgment on that claim and remanded for further proceedings.  See id. at 264, 267.

On remand, the parties conducted discovery.  Following up on previously submitted affidavits from Everette Boone, who served on the Committee and emceed the Friday-night events, and from William Allen, a regular Depot attendee, alleging that Willis "and her partner would hunch on the floor [at the Depot], simulating sexual intercourse," J.A. 53, 56, Willis served interrogatories on March 20, 2006, asking the Town to "identify all persons with whom [it] contend[ed] Mrs. Willis engaged in simulated sexual intercourse, as alleged in the Affidavits of Everette Boone and William Allen." J.A. 411-12.  On June 14, 2006, seven weeks after responses were due, three weeks after Willis filed a motion to compel, and one day after the district court had specifically inquired regarding the responses, the Town answered that it had not been able to obtain the requested information but that it was "reported" that Willis had danced with her son.  J.A. 400 (internal quotation marks omitted).  After Willis moved for sanctions, the district court

found that Town officials had frustrated compliance with discovery, and the court ordered responses from the Town by August 28, 2006, threatening the officials with contempt if they did not comply.

On August 24, 2006, the Town served responses, verified by then-Mayor Pro Tem Laura Smith, identifying Emmitt Bullman, Dennis Brown, and Ben Fisher (Willis's son) as having simulated sexual intercourse with Willis at the Depot. Responding to further interrogatories, the Town named Boone, Ward, Bonnie Chandler, Winston Cook, Aubrey Sams, and Beverly Seivers as the people who "ha[d] claimed either that [Bullman, Brown, or Fisher] was a dance partner of Mrs. Willis's or that Mrs. Willis engaged in simulated sexual intercourse with such individual." J.A. 418. Willis subsequently deposed Bullman and all of the identified witnesses except Sams, who was deceased when identified by the Town, and Allen, who died before he could be deposed.

At his deposition, Boone testified that he had never seen any of Willis's dance partners dance in a vulgar manner, and he admitted that the statement in his affidavit that Willis's partners hunched and simulated sexual intercourse with her was incorrect. He continued to maintain, however, that Willis danced in a vulgar manner. He specifically noted that Willis danced provocatively with her son, with whom he saw Willis dancing at the Depot "about two dozen" times. J.A. 925. According to Boone, Fisher would "gyro[] around a little bit" while Willis danced "[w]ith her legs

-11-

spread" "with her hands under her [breasts]," simulating sexual intercourse. J.A. 930-31. Chandler corroborated Boone's testimony that Willis simulated sexual intercourse with Fisher at the Depot without Fisher himself ever dancing in a vulgar fashion. Ward, Cook, and Seivers, however, denied seeing Willis simulate sexual intercourse at the Depot. Bullman and Fisher (identified by the Town as dance partners of Willis) and Willis herself denied any inappropriate dancing. Indeed, Bullman and Fisher both denied ever dancing with Willis at the Depot. Willis confirmed that she never danced with her son at the Depot.

Mayor Pro Tem Smith was also deposed. Although she had verified the Town's interrogatory responses, Smith admitted to having no basis for believing that Brown simulated sexual intercourse with Willis. Further, her only explanation for believing that Bullman simulated sexual intercourse with Willis was that his name had "c[o]me up" at some point "over the years" as having been caught on videotape doing "some type of inappropriate dance" with Willis. J.A. 428.

Following the completion of discovery, Willis moved for sanctions against the Town, Smith, and Boone. See Fed. R. Civ. P. 37. Willis argued that the Town's allegation in its interrogatory response--verified by Smith--that Willis had simulated sexual intercourse with Brown, Bullman, and Fisher was baseless, and that Boone himself had admitted the falsity of the allegation in his

previous affidavit that Willis and her partner had hunched on the floor simulating intercourse. Willis requested that the Town's answer be stricken and that default judgment be entered against the Town. Willis also requested that the Town, Smith, and Boone be held liable for the costs caused by their false statements, and that contempt proceedings be commenced against them. Two days later, the Town moved for summary judgment.

The district court denied Willis's motion for sanctions, finding that the complained-of conduct was not "as egregious as characterized by [Willis]." Willis v. Town of Marshall, 2007 WL 1100836, at *14 (W.D.N.C. Apr. 12, 2007). The court also granted the Town's summary judgment motion. See id. at *13. The court interpreted our remand "as being limited to whether Willis's 'unnamed partner[s]' danced in a similar fashion to her dancing," but nonetheless considered the viability of other legal theories "in the interest of finality." Id. at *8 n.6. The court concluded that no genuine issue of material fact existed regarding the "other partners" theory because Willis had conceded that none of her dance partners danced inappropriately. See id. at *9. The district court further concluded that Willis, as a matter of law, had refused to conform her conduct after she was warned repeatedly by the Committee. See id. at *11. Based on that fact, the district court determined that Willis was not similarly situated to any other Depot attendee; that even if she had been similarly situated,

-13-

any difference in treatment was not intentional; and even if she had been intentionally treated differently from other similarly situated attendees, there was a rational basis for the difference in treatment.  See id. at *11-*13.

## II.

Willis first maintains that the district court erred in granting summary judgment against her because there were several genuine issues of material fact relating to her equal protection claim.  We agree.

We review a district court's grant of summary judgment de novo, viewing any facts and inferences drawn from them in the light most favorable to Willis, the nonmoving party.  See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir. 1996). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Therefore, although we must consider the record in its entirety, we "must disregard all evidence favorable to the moving party that the jury is not required to believe."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000).  Thus, we consider "evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and

unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id. (internal quotation marks omitted).

The claims at issue here are based on the Equal Protection Clause of the Fourteenth Amendment, the purpose of which "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (internal quotation marks omitted). The Supreme Court has recognized the validity of "class of one" Equal Protection claims "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. For a plaintiff to demonstrate that she is "similarly situated," her evidence "must show an extremely high degree of similarity between [herself] and the persons to whom [she] compare[s]" herself. Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006). Generally, whether a plaintiff in a class-of-one equal protection claim is similarly situated to those who have been treated differently is a factual issue for a jury. See Clubside, Inc., 468 F.3d at 159; McDonald v. Village of Winnetka, 371 F.3d 992, 1002 (7th Cir. 2004).

Willis's primary theory of liability is that she was similarly situated to other Depot attendees because, like most other

-15-

attendees, she danced and dressed appropriately. She maintains that the Town intentionally treated her differently than these other attendees by banning her from the Depot and that there was no rational basis for the difference in treatment. We agree with Willis that several genuine issues of material fact exist regarding this theory.[2]

First, several genuine issues of material fact exist regarding whether Willis danced or dressed inappropriately. The record contains evidence that Willis's dancing at the Depot was appropriate and not unlike other attendees. See, e.g., J.A. 33, 36 (affidavits of Pat and Hugh Mathus stating that Willis's style and manner of dancing was appropriate and that others at the Depot dance in the same manner); J.A. 161 (affidavit of Louise Branam stating that "there [was] certainly nothing vulgar about" Willis's

---

[2]Because we hold, for the reasons we will discuss, that several genuine issues of material fact exist regarding this theory, we do not address Willis's argument that genuine issues of material fact also exist regarding her theory that even if she danced or dressed inappropriately, she was intentionally treated differently from various other individuals who behaved inappropriately at the Depot. We do note, however, that, as was also true of our prior opinion, our reversal of summary judgment on the equal protection claim on the basis that genuine issues of fact exist regarding a particular legal theory should not be interpreted as a rejection of any theory that we have not specifically discussed.

Because we hold that the district court erred in granting summary judgment on the equal protection claim, we also do not address Willis's alternative argument that if summary judgment was properly granted on her class-of-one claim, it was improperly granted on her procedural and substantive due process claims.

style of dancing); J.A. 164 (affidavit of Nancy Noland stating that "there was nothing vulgar or obscene about [Willis's] dancing"). While the Town maintains that Willis simulated sexual intercourse with her son at the Depot, Willis and her son deny that that ever occurred. Indeed, Willis stated in an affidavit that her son never even came to the Depot before she was banned, and her son confirmed that he was never at the Depot at the same time that she was.

The record also contains evidence that Willis dressed appropriately at all times at the Depot. <u>See</u> J.A. 33, 36 (affidavits of Pat and Hugh Mathus stating that Willis "dressed no differently than any other women" at the Depot); J.A. 161-62 (affidavit of Louise Branam stating that Willis "dressed up more than the other women, in what [she] would call church outfits," which included skirts); J.A. 165 (affidavit of Nancy Noland stating that Willis "dressed nicely at the Depot"). Although the record does have evidence that Willis's skirts were so short that her underwear could be seen when she bent over while dancing,[3] it also includes evidence that Willis "dressed no differently than any other women" at the Depot, J.A. 33, 36, and that people sometimes could see the underwear of other women who were dancing at the

---

[3]The record also contained evidence that Willis exposed her "private parts" at the Depot, but that was contradicted by several witnesses. <u>See, e.g.</u>, J.A. 165 (affidavit of Nancy Noland stating that Willis "dressed nicely at the Depot," "always wore pantyhose under her skirts," and "never exposed herself" there); J.A. 744-45 (Willis's deposition testimony that she never exposed herself at the Depot).

Depot, see J.A. 824-25. Willis's testimony that no one ever told her before she was banned that she needed to change the way she dressed also supports her contention that her dress was neither out of the ordinary nor inappropriate.

The Town argues that, as a matter of law, Willis was not similarly situated to other Depot attendees because the Committee had received complaints about Willis. On this point, Willis maintains that at least a genuine issue of material fact exists regarding whether she is similarly situated to Depot attendee A.J. Bridges. The record shows that Bridges, like Willis, had an unorthodox dancing style. He was described as "danc[ing] like a little banty rooster, jumping around," "bending way over," and, on at least one occasion, "[t]apping his feet really loudly." J.A. 474, 864-65. Smith said of Bridges that he "danced with everyone, whether [they] wanted to or not." J.A. 452. The record contains evidence that the Committee objected to Bridges's dancing style and approved a Committee meeting motion providing that Ward would speak with Bridges about it. When Ward did so and Bridges agreed to accede to the Committee's wishes, no sanction was imposed.

The Town also maintains that, as a matter of law, Willis was not similarly situated to Bridges because, unlike Bridges, she refused to comply with the Committee's repeated requests to conform her conduct to the Committee's expectations. But genuine issues of material fact exist on that point as well. First, Willis testified

that she received only a single warning (from Ward) one night at the Depot to "cool it," J.A. 741, which Willis did not understand and which Ward did not clarify.[4] Second, the record contains evidence that after this comment--as before it--Willis's dress and dancing were wholly appropriate, thereby creating a fact issue regarding whether Willis refused to heed any warning. Boone

---

[4]Claiming they are self-serving, the Town urges us to disregard Willis's statements in her affidavits and deposition regarding the warnings she received and whether she dressed and danced appropriately after the warning. That is not the law we apply at the summary judgment stage, however. In viewing the record in the light most favorable to the nonmovant, we assume the credibility of the plaintiff's evidence unless it is facially incredible. See Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998) (reviewing denial of Rule 50(b) motion for judgment as a matter of law); see also Dennis v. Columbia Colleton Med. Ctr., 290 F.3d 639, 644 (4th Cir. 2002) ("A Rule 50(b) motion for judgment as a matter of law follows the same standard as a Rule 56 motion for summary judgment."). That the plaintiff herself is the source of forecasted testimony is not sufficient to discredit it as a matter of law. See Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc., 275 F.3d 762, 768 n.3 (9th Cir. 2001) ("[T]hat a statement is self-serving bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact."). It is also worth noting that much of the Town's evidence is self-serving as well in that it is from members of the Committee, whose decision to ban Willis is being challenged in this suit.

Williams v. Giant Food, Inc., 370 F.3d 423, 433 (4th Cir. 2004), on which the Town relies, is inapposite. There we held only that a plaintiff's conclusory testimony that she believed her poor performance evaluations to be "unfair and untrue and incorrect" was "merely a self-serving opinion that cannot, absent objective corroboration," create a genuine issue of fact that could defeat summary judgment. See id. at 433 (internal quotation marks omitted). Here, the question of how many warnings Willis received is one of fact, not opinion. And her assertions that she danced and dressed appropriately were corroborated by several other witnesses.

testified in his deposition that he warned Willis that she was dancing inappropriately, and she told him that "she'd do what she damn pleased." J.A. 952. However, Willis denied that any such warning ever occurred.

The Town further argues that even if there existed genuine issues of fact regarding whether Willis was treated differently from attendees similarly situated to her, Willis failed to create a genuine factual issue concerning whether such different treatment was intentional. See Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach, 420 F.3d 322, 329 (4th Cir. 2005) ("Even if we were to determine that plaintiffs' project was similarly situated to other projects, they would still need to show purposeful discrimination."). We disagree. The record contains evidence that Willis's dancing and dress were entirely appropriate and yet the Committee took the extreme step of banning her for life without ever previously having informed her of what behavior of hers was objectionable, and that the Board refused to reconsider the ban even after Willis promised to conduct herself appropriately and in conformance with whatever rules the Committee would adopt. On these facts, a reasonable jury could conclude that the Town's actions, rather than being guided by concern for the public welfare, were actually motivated by a conscious desire to single her out for undeserved punishment. Willis's and her son's statements that they were never even at the Depot at the same time

further support a reasonable inference that the dispute about whether Willis had simulated sex with Fisher at the Depot was not just the result of an honest difference of opinion, but instead, the result of an accusation that was known to be false.  Indeed, the Town's allegations in its interrogatory responses that Willis simulated sexual intercourse with Brown and Bullman, when no basis existed for those accusations, are consistent with that theory as well.

Finally, the Town maintains that even if Willis was intentionally treated differently than similarly situated Depot attendees, there was a rational basis for the difference in treatment "due to the fact that only Willis, and no other dancer at the events, wore inappropriate clothing and, accidentally or not, exposed her undergarments while engaging in such dance, and refused to modify her dress and behavior after being warned by the Depot Committee."  Br. of Appellee at 23.  This argument, however, clearly suffers from the same defect as the Town's other arguments--its failure to view the record in the light most favorable to Willis.

In sum, the factual issues relating to Willis's equal protection claim are hotly contested, not the sort that may be resolved by a judge at the summary judgment stage.  We therefore reverse the grant of summary judgment and remand for further proceedings.

III.

Willis next argues that the district court abused its discretion in denying her motion for sanctions and, in particular, refusing to enter a default judgment against the Town. We disagree.

Rule 37 of the Federal Rules of Civil Procedure authorizes a district court to impose sanctions for discovery-related misconduct. The parties agree that in determining whether to enter a default judgment as a discovery sanction, a district court considers "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would [be] effective." Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998). We review the denial of a sanctions request for abuse of discretion. See Hinkle v. City of Clarksburg, 81 F.3d 416, 426 (4th Cir. 1996).

As we have explained, the facts forming the basis for Willis's sanctions motion center around the Town's filing, at the outset of this case, of Boone's affidavit alleging that Willis "and her partner would hunch on the floor, simulating sexual intercourse," J.A. 53, as well as the Town's subsequent interrogatory responses, verified by then-Mayor Pro Tem Smith, stating that Willis simulated sexual intercourse with Brown, Bullman, and her son.

-22-

It is clear that Smith, the sole person verifying the interrogatory responses for the Town, had no basis for believing that Willis simulated sexual intercourse with Brown or Bullman. Smith stated in her deposition that Boone had identified only Willis's son as a person with whom Willis had simulated sexual intercourse. Smith had no idea why Brown was named. And, her only explanation for Bullman being accused of simulating sexual intercourse is that his name had come up at some point "over the years" as having been caught on videotape doing "some type of inappropriate dance" with Willis. J.A. 428.

As to Boone, he has admitted the incorrectness of his allegation in his affidavit that Willis "and her partner would hunch on the floor, simulating sexual intercourse." J.A. 53. Willis suggested at oral argument that it was significant that Boone's retraction came after we issued an opinion suggesting that it might be an equal protection violation to punish Willis but not her partner for such activity. See Willis, 426 F.3d at 263. On this matter we express no opinion.

Regardless of whether we might have adjudicated Willis's motion differently had we addressed it in the first instance, we do not believe that the district court's denial constituted an abuse of discretion. The Town's accusing Bullman and especially Brown of simulating sex with Willis, in the absence of any basis for those accusations, was certainly improper. But it is unclear what, if

any, prejudice resulted because even had the allegations regarding Bullman and Brown not been made, the central issue--whether Willis danced inappropriately at the Depot--would still have prompted Willis to depose many, if not all, of these witnesses.  As for Boone, his changing his story from alleging that Willis and her partner would both hunch, simulating intercourse, to alleging that Willis spread her legs and motioned in a sexual manner while her partner "gyroed around a little bit," J.A. 931, is not such a radical alteration and could easily have been interpreted by the district court as the simple mistake of a lay person not realizing the importance of the particulars in describing the dancing of two people.  Since the district court is more familiar with the individuals and the background of this particular situation, we will defer to its good judgment on the appropriateness of sanctions.


IV.

In sum, we affirm the denial of Willis's sanctions motion but reverse the grant of summary judgment against Willis and remand to the district court for further proceedings.


AFFIRMED IN PART;
REVERSED AND REMANDED IN PART