NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0133n.06

No. 24-3502

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

RICHMOND ROAD PARTNERS, LLC; STEP FORWARD,

      Plaintiffs-Appellants,

v.

CITY OF WARRENSVILLE HEIGHTS; CITY OF WARRRENSVILLE HEIGHTS PLANNING COMMISSION; CITY OF WARRENSVILLE HEIGHTS BUILDING COMMMISSIONER,

      Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED

Mar 07, 2025

KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

---

Before: BATCHELDER, LARSEN, and RITZ, Circuit Judges.

LARSEN, Circuit Judge. Richmond Road Partners, LLC applied for a site plan approval to lease one of its buildings for use as a Head Start preschool. The Warrensville City Council denied Richmond Road's application. On administrative appeal, a state court found that the permit denial was arbitrary and ordered Warrensville to grant the permit. While the administrative appeal was pending, Richmond Road sued the City, arguing that the permit denial and delay constituted a regulatory taking. The district court granted Warrensville's motion for judgment on the pleadings, concluding that Richmond Road had failed to allege a cognizable property interest or a taking. Richmond Road appeals. We AFFIRM.

I.

In 2022, Richmond Road agreed to lease one of its properties to Step Forward, an Ohio non-profit school that provides Head Start early education services for low-income families in the

Cleveland, Ohio area. The relevant property is zoned as U-7A, which permits "[p]ublic and private schools, universities, colleges, professional schools, vocational schools, and related education facilities" or "[n]onprofit educational and scientific research agencies." R. 1-1, PageID 9–10. Richmond Road submitted a site plan application to the Warrensville Planning Commission seeking a conditional use permit to open a Head Start "daycare" center. R. 11, PageID 66. The Planning Commission and the City Council denied the application because daycares are not a permitted use. Richmond Road then resubmitted its application for approval as a school and/or a non-profit educational agency. *Richmond Rd. Partners v. City of Warrensville Heights*, 2024 WL 2080737, at *1 (N.D. Ohio May 9, 2024). The Planning Commission also denied this second application. The Commissioners provided little explanation why, merely voicing that they did not think this was an appropriate location for a school (despite its being zoned as such). The City Council also denied Richmond Road's application. In March 2023, Richmond Road appealed the denial to the Cuyahoga County Court of Common Pleas ("state court") under Ohio Revised Code § 2506, which allows a party to appeal final decisions by political subdivisions to the local county court of common pleas. *Id.*

Alongside its appeal, Richmond Road filed this complaint in state court. Richmond Road brought four claims: (1) seeking a declaration that Warrensville's permit denial was arbitrary; (2) arguing Warrensville violated the Fifth Amendment's Just Compensation Clause; (3) seeking a mandatory injunction directing Warrensville to start state appropriations proceedings to compensate Richmond Road for lost rents; and (4) a claim under 42 U.S.C. § 1983 for violation of the Fifth and Fourteenth Amendments and Article I § 19 of the Ohio Constitution. *Id.* at *2. Warrensville removed the case to federal court.

In October 2023, the state court resolved the administrative appeal, finding that the City Council's permit denial "was arbitrary, unreasonable, and unsupported by the preponderance of the submitted evidence." *Id.* at *1. The state court remanded the matter, directing Warrensville to grant Richmond Road its permit.

In May 2024, the federal district court granted Warrensville's motion for judgment on the pleadings and dismissed all claims. It reasoned that the state court's administrative decision determining that Warrensville acted arbitrarily in denying the application mooted Richmond Road's request for declaratory relief on this issue. *Id.* at *3. The district court then found that Richmond Road had not adequately alleged a cognizable property interest in the permit it sought and, even if it had, it failed to demonstrate a taking because it had not shown that the delay in getting the permit was extraordinary. *Id.* at *3–4. Richmond Road now appeals.[1]

## II.

We review de novo a district court's grant of judgment on the pleadings under Federal Rule of Civil Procedure 12(c), applying the same standard of review as a Rule 12(b)(6) decision. *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019). Courts must construe the complaint "in the light most favorable to the plaintiff" and accept all well pleaded allegations as true when determining whether the complaint states, "a claim to relief that is plausible on its face." *Id.* (quoting *Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018)). In doing so, we "focus only

---

[1] Just before filing its notice of appeal, Richmond Road asked the district court to reconsider its decision under Rule 59(e). We held the appeal in abeyance pending resolution of the Rule 59(e) motion. In that motion, Richmond Road largely reiterated its arguments in opposition to judgment on the pleadings. The district court denied the motion for its previously stated reasons. Richmond Road did not amend its notice of appeal to include the Rule 59(e) motion. All that is before us, therefore, is the district court's grant of judgment on the pleadings. *See JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 550 F.3d 529, 532 (6th Cir. 2008) ("[A] court of appeals has jurisdiction only over the areas of a judgment specified in the notice of appeal as being appealed.").

on the allegations in the pleadings." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480, 483 (6th Cir. 2020).

A.

The district court granted Warrensville judgment on the pleadings, concluding that Richmond Road had failed to allege a taking within the meaning of either the federal or Ohio constitutions. We agree.

The Takings Clause of the Fifth Amendment prohibits government from taking private property for public use without just compensation, *see* U.S. Const. amend. V, and applies to the states via the Fourteenth Amendment. *See Chi., Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 236 (1897). The Supreme Court has devised different tests for assessing various types of takings.[2] *See Lingle v. Chevron, U.S.A.*, 544 U.S. 528, 548 (2005) (discussing the different takings tests). The Court's test set forth in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978) governs the question here—"whether a [property] use restriction effects a taking." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148 (2021). Such takings are commonly known as "regulatory takings." *Id.* at 149. When considering whether a regulatory taking has occurred, we first ask "whether the claimant has established a cognizable property interest for the purposes of the Just Compensation Clause." *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 609 (6th Cir. 2016) (citation omitted). Next, we apply the "*Penn Central* factors" to

---

[2] Until recently, a party had to prove that the local government's land use decision was sufficiently final, which meant essentially exhausting state processes before it could bring a § 1983 claim for violation of the Fifth Amendment. *See Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). But the Supreme Court overturned that requirement, holding that a property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it, and can therefore bring a § 1983 claim in federal court at that time without first exhausting state remedies. *Knick v. Twp. of Scott*, 588 U.S. 180, 194 (2019).

determine whether a taking has occurred. *Cedar Point*, 594 U.S. at 156. *Penn Central* directs courts to "balanc[e] factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Id.* at 148. The same is true under Article I § 19 of the Ohio Constitution, which in this context, tracks the federal rule.[3] *See Wymsylo v. Bartec, Inc.*, 970 N.E.2d 898, 912–14 (Ohio 2012) (applying *Penn Central*).

In this case, we assume that Richmond Road had a property interest protected by the federal Takings Clause and the Ohio Constitution. Even so, Warrensville's permit denial was not a taking under either federal or Ohio law.

In *Agins v. City of Tiburon*, the Supreme Court rejected a landowner's complaint that a municipality's "precondemnation activities" had amounted to a taking. 447 U.S. 255, 263 n.9 (1980), *abrogated on other grounds*, *Lingle*, 544 U.S. 528. The Court reasoned that "[m]ere fluctuations in value during the process of governmental decisionmaking, absent extraordinary delay, are 'incidents of ownership. They cannot be considered as a 'taking' in the constitutional sense.'" *Id.* (quoting *Danforth v. United States*, 308 U.S. 271, 285 (1939)). Relying on *Agins*, the district court in this case concluded that Richmond Road's loss of rents during the government's decision-making process, including the appeal to the state court, did not constitute a taking because the delay was not extraordinary. *Richmond Rd.*, 2024 WL 2080737, at *3–4.

When deciding whether a taking occurred under the Fifth Amendment, federal courts regularly apply *Agins*' "extraordinary delay" standard to administrative decisions. *See, e.g.*,

---

[3] Warrensville correctly explains that the Ohio Supreme Court has interpreted Article I § 19 of the Ohio Constitution to provide greater protection than federal law in the physical takings context when it came to what constitutes a "public use." *See Norwood v. Horney*, 853 N.E.2d 1115, 1136, 1141 (Ohio 2006). Those greater protections are not at issue here in the regulatory takings context, however.

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 334–35, 341–42 (2002) (rejecting arguments that a temporary moratorium on development was a regulatory taking because the delay was "not unreasonable"); *Mich. Chrome & Chem. Co. v. City of Detroit*, 12 F.3d 213 (Table), at *9 (6th Cir. 1993) (applying the "extraordinary delay" standard to a master airport plan); *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 618, 631 (9th Cir. 2020) (applying the "extraordinary delay" standard to the reversion of zoning classifications from urban back to agricultural); *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 330 (4th Cir. 2005) (applying the "extraordinary delay" standard to the issuance of building permits). The same is true in Ohio. *See State ex rel. Duncan v. Middlefield*, 898 N.E.2d 952, 956–57 (Ohio 2008) (endorsing the "extraordinary delay" standard and holding that "[u]ntil regulatory delay becomes unreasonable, there is no taking").

The Supreme Court has been careful to distinguish, however, between extraordinary delay, which may constitute a taking, and "the quite different questions that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like." *First English Evangelical Lutheran Church of Glendale v. Los Angeles County*, 482 U.S. 304, 321 (1987). So the issue here is whether Warrensville's delay in granting the permit is extraordinary or routine. To resolve that question, courts weigh "all relevant factors, including the length of the delay," "bad faith on the part of the government," and "any delay that the interestholder's conduct caused." *State ex rel. AWMS Water Sols., L.L.C. v. Mertz*, 165 N.E.3d 1167, 1188 (Ohio 2020) (cleaned up); *Wyatt v. United States*, 271 F.3d 1090, 1098 (Fed. Cir. 2001) (applying these same factors and the "nature of the permitting process as well as the reasons for any delay").

When, as in this case, "a development permit . . . is denied in a land use regulatory process, but that denial is later held invalid by a reviewing court," courts "generally have rejected" the claim that the delay amounted to a "compensable [] regulatory taking" under the Fifth Amendment. Edward H. Ziegler, Jr., First English *and normal delays—Illegal permit denial and temporary takings*, 1 Rathkopf's The Law of Zoning and Planning § 6:28 (4th ed.).  Courts frequently hold that the time necessary for review, including judicial review, falls under *First English*'s "normal delay" distinction.  *Id.*; *see Sunrise*, 420 F.3d at 330 ("As a general rule, a delay in obtaining a building permit is not a taking but a non-compensable incident of ownership."); *Smith v. City of Brenham*, 865 F.2d 662, 663 (5th Cir. 1989) (holding that a four-year delay in granting a permit was not sufficient for a taking); *see also Smith v. Town of Wolfeboro*, 615 A.2d 1252, 1258 (N.H. 1992) ("The delay inherent in the statutory process of obtaining [the permit], including appeals to the superior court and to this court, is one of the incidents of ownership . . . [which] must be borne by the property owner and does not give rise to a compensable taking."); *Byrd v. City of Hartsville*, 620 S.E.2d 76, 81 (S.C. 2005) ("[N]ormal delays in obtaining building permits . . . have long been considered permissible exercises of the police power.  Until regulatory delay becomes unreasonable, there is no taking." (internal citations omitted)).  Were that not the case, "[a] rule that required compensation for every delay in the use of property would render routine government processes prohibitively expensive or encourage hasty decisionmaking."  *Tahoe-Sierra*, 535 U.S. at 335.

Applying federal and Ohio takings precedent to Richmond Road's claims shows there was no taking here.  There was a one-year delay between Warrensville's permit denial and the state Court ordering Warrensville to issue the permit to Richmond Road.  In the bureaucratic world, such delays are not extraordinary.  *See, e.g.*, *Wyatt*, 271 F.3d at 1098 (gathering cases showing that

much longer delays were not extraordinary). What's more, the "bulk of the delay that [Richmond Road] claim[s] was extraordinary was a result of the process to appeal [Warrensville's] decision." *Sunrise*, 420 F.3d at 330. In fact, Richmond Road may even have contributed to the delay by first submitting its application as a "daycare" facility and submitting the corrected application only on its second try. *Richmond Rd.*, 2024 WL 2080737, at *1. Even if we were to agree that a one-year delay was unreasonable in this situation, Warrensville lacked "any control over how quickly the case moved under state law through the various judicial appeals processes." *Sunrise*, 420 F.3d at 330. Warrensville was thus not the offending entity on the delay front up until the state court's decision. *Cf. Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 498 (6th Cir. 2001) (dismissing a claim of unreasonable delay against a township because the delay was caused by the reviewing court). As for bad faith on the government's part, Richmond Road does not allege any.

Accordingly, we cannot agree with Richmond Road that the denial and subsequent delay in issuing the permit was a regulatory taking.[4]

### B.

Richmond Road also argues that its claim could be read to contend that Warrensville violated its substantive due process rights. It asks us to remand for the district court to consider that argument. But Richmond Road did not raise a substantive due process claim in the district court, so it is forfeited. *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022).

---

[4] Richmond Road represents that, as of the time it filed its initial appellate brief in our court, Warrensville had "neither granted [its] Site Plan application nor issued the corresponding zoning permit" as ordered by the state court, nearly one year earlier. Nor has Warrensville appealed the court's decision. Should Warrensville continue to refuse Richmond Road its court-ordered permit, its delays might become extraordinary and constitute a taking, though that question is not before us.

In its complaint, Richmond Road alleged in the most general of terms that Warrensville "deprived Plaintiffs of their civil rights guaranteed by the Fifth and Fourteenth Amendments." R. 1-1, PageID 13 ¶ 30. Richmond Road never alleged anything further concerning a due process claim, however. In its next filing—its opposition to judgment on the pleadings—Richmond Road again failed even to mention its supposed substantive due process claim when arguing that the district court should not dismiss its complaint. Richmond Road twice mentions the Fourteenth Amendment, but only in connection with the Fifth Amendment, which of course is the source of the incorporated Takings rights its briefing did discuss. *See Chi., Burlington*, 166 U.S. at 236. The district court understandably did not discuss a Fourteenth Amendment substantive due process claim when granting judgment on the pleadings because Richmond Road did not fairly present that claim. And Richmond Road cannot raise the argument for the first time on appeal. *See Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 443 (6th Cir. 2022) (explaining that appellate courts do "not ordinarily address new arguments raised for the first time on appeal").

C.

Richmond Road finally argues that the district court abused its discretion by exercising supplemental jurisdiction over its takings claim under the Ohio Constitution rather than remanding the claim to state court.[5] We disagree.

We review a district court's exercise of supplemental jurisdiction over state-law claims for an abuse of discretion. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010). In analyzing whether a court abused its discretion, we weigh the "values of judicial economy,

---

[5] The district court dismissed Richmond Road's state takings claim in its grant of judgment on the pleadings without explicitly discussing Ohio takings jurisprudence. *See Richmond Rd.*, 2024 WL 2080737, at *4. In its denial of Richmond Road's Rule 59(e) motion, the court clarified, however, that "to the extent it was unclear" in its original opinion, "the Court finds that Plaintiffs failed to plead a takings claim under Article I, § 19 of the Ohio Constitution." R. 27, PageID 306 n.4.

convenience, fairness, and comity." *Id.* "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Id.* at 952. But this is not an invariable rule.

We see no abuse of discretion here. Richmond Road argues that the district court abused its discretion because (1) a remand would not waste judicial resources since no discovery has occurred and (2) there are remaining complex state law questions. But this case was on the district court's docket for about eight months before the court granted Warrensville's motion for judgment on the pleadings. The court was thus "familiar with the facts, and a significant amount of time had been invested in the litigation by everyone involved." *Stevens v. Saint Elizabeth Med. Ctr., Inc.*, 533 F. App'x 624, 633 (6th Cir. 2013). Moreover, no discovery was needed, as the matter turned on a question of law. Remanding these claims to state court when they were easily resolvable in federal court would have delayed a straightforward resolution, conserving everyone's resources. And, as we have explained, Ohio's regulatory takings jurisprudence largely mirrors federal takings law.

Richmond Road argues that the district court should have remanded the Ohio claims to state court to determine whether the "substantially advances" test for judging regulatory takings survives under the Ohio Constitution. The Ohio Supreme Court, following federal takings law, adopted that test in *State ex rel. Shemo v. City of Mayfield Heights*, 765 N.E.2d 345 (2002). The U.S. Supreme Court has since abandoned that test for the federal Constitution. *Lingle*, 544 U.S. at 540. And at least one Ohio court has recognized *Shemo*'s implicit overruling. *See State ex rel. Anderson v. Obetz*, 2008 WL 3319285, at *2–3 (Ohio Ct. App. Aug. 12, 2008). But even if *Shemo* is still good law, that would not merit a remand in this case because Richmond Road did not meaningfully advance an argument under the "substantially advances" test before the district court

or before us. In sum, the district court did not abuse its discretion in exercising supplemental jurisdiction over Richmond Road's state-law claim.

* * *

We AFFIRM the district court's grant of judgment on the pleadings.